In the Matter of the GUARDIANSHIP and Conservatorship OF Constance M. SAMS and Robbie L. Sams, minors.

Appeal of Connie Kay SAMS.

No. 3–59558.

Supreme Court of Iowa.

July 29, 1977.

Patrick H. Payton, of Payton & Hearn, P.C., Des Moines, for appellant.

James F. Fowler, of Wilson & Goodhue, Indianola, for appellee.

Heard by MOORE, C. J., and RAWL-INGS, REYNOLDSON, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

The mother of two small children appeals from the trial court's refusal to set aside an ex parte order appointing her father their guardian and conservator. We reverse.

This is another difficult case in which a person who has cared for the children of another seeks to obtain their custody against the wishes of the parent. See *Doan Thi Hoang Anh v. Nelson*, 245 N.W.2d 511 (Iowa 1976); *Hulbert v. Hines*, 178 N.W.2d 354 (Iowa 1970); *Garvin v. Garvin*, 260 Iowa 1082, 152 N.W.2d 206 (1967); *Halstead v. Halstead*, 259 Iowa 526, 144 N.W.2d 861 (1966); *Alingh v. Alingh*, 259 Iowa 219, 144 N.W.2d 134 (1966); *Painter v. Bannister*, 258 Iowa 1390, 140 N.W.2d 152 (1966), cert. denied, 385 U.S. 949, 87 S.Ct. 317, 17 L.Ed.2d 227; *Vanden Heuvel v. Vanden Heuvel*, 254 Iowa 1391, 121 N.W.2d 216 (1963); *McKay v. McKay*, 253 Iowa 1047, 115 N.W.2d 151 (1962); *McKay v. Ruffcorn*, 247 Iowa 195, 73 N.W.2d 78 (1955); *In re Guardianship of Plucar*, 247 Iowa 394, 72 N.W.2d 455 (1955).

The contest here is between Robert L. Slater, 46, a grandfather of the children, and his daughter Connie Kay Sams, 21, the children's mother. The children are Robbie L. Sams, 5, and Constance M. Sams, 3. Robbie has lived with his mother since his birth except for several months in 1974. Constance lived with her mother for the first year of her life but has lived with her grandfather most of the time since then.

Connie was separated from her husband Robert Eugene Sams in the summer of 1974. She commenced a dissolution action in July. At about the same time she was hospitalized for gall bladder surgery and left the children with her father and stepmother, Frances L. Slater, during that period. After she was released from the hospital she also left the children in her father's home much of the time. The reason for this is not clear, but Connie was working, having financial problems and having trouble finding an adequate place to live. At some point she was hospitalized again for a brief period. She contends this hospitalization was caused by an accidental overdose of nerve medication. Her father offered evidence suggesting that she was then having emotional problems. He also introduced evidence that she lived with another man during part of the time she was separated from her husband.

On November 20, 1974, at a time when both children were residing with him in his trailer home in New Virginia, Mr. Slater petitioned the district court for appointment as their guardian and conservator. Neither Connie nor the children's father received notice of the petition. The court entered an ex parte order also on November 20, making the requested appointment. When Connie learned of the appointment she obtained legal advice from the Polk County legal aid office and initiated steps to have the appointment terminated. In December 1974 she removed Robbie from her father's home and refused the request of Mrs. Slater that she return him.

In March 1975 Connie filed a petition to terminate the guardianship and conservatorship which, for reasons the record does not disclose, was not heard until May 1976. After the hearing the trial court made a ruling by calendar entry "that the Application for Termination of the Guardianship is denied at this time." This appeal followed.

Two questions are presented by Connie's appeal. The first relates to the constitutionality of Code §§ 633.553 and 633.567 which provide, regarding guardianship and conservatorship petitions:

No notice of such petition need be given when the proposed ward is a minor and such petition is filed by the person having custody of the proposed ward. Connie contends these provisions deny due process of law under the fourteenth amendment of the Federal Constitution insofar as they do not require notice and an opportunity to be heard to natural parents. This question was not presented in the trial court and will not be entertained here. *Wolfs v. Challacombe*, 218 N.W.2d 564, 570 (Iowa 1974).

The second question in Connie's appeal concerns the merits of the trial court's refusal to terminate the guardianship and conservatorship. It implicates two threshold issues. One is whether she had the right to challenge the original ex parte order in the May 1976 hearing. The other is whether Mr. Slater had the burden of persuasion in the termination hearing to establish that the best interests of the children were served by his appointment as their custodian.

■ In her application to terminate the guardianship and conservatorship, Connie alleged the order was entered without notice to her. Mr. Slater admits the appointment was made by ex parte order. Hence this situation is governed by § 633.37, The Code, which provides:

All orders entered without notice or appearance are reviewable by the court at any time prior to the entry of the order approving the final report.

Therefore, apart from the issue of due process, Connie had the right by statute to obtain review of the ex parte order. See also *Brooke v. Logan*, 112 Ind. 183, 13 N.E. 669 (1897); *Sinquefield v. Valentine*, 159 Miss. 144, 132 So. 81 (1931); *Clarke v. Lyon*, 82 Neb. 625, 118 N.W. 472 (1908); *Ex parte Englebert*, 70 S.D. 467, 18 N.W.2d 794 (1945); cf. *Catholic Charities of the Archdiocese of Dubuque v. Zalesky*, 232 N.W.2d 539 (Iowa 1975). Her right to challenge the ex parte order was not foreclosed.

She contends the real issue for adjudication in the May 1976 hearing was whether she or her father should have custody of the children. She also contends her father had the burden to prove his appointment as guardian and conservator was in the best interests of the children in view of the preference accorded natural parents for such appointment under §§ 633.559 and 633.571, The Code. Mr. Slater denies the issue was child custody, and he asserts Connie was limited to proving his appointment should be terminated because the guardianship and conservatorship was "no longer necessary" as provided in § 633.675, The Code. We agree with both of Connie's contentions.

■ The contest was essentially over child custody. By statutory definition a guardian is "the person appointed by the court to have the custody of the person of the ward * * *." § 633.3(19), The Code. These children had no property requiring appointment of a conservator apart from periodic payments which might be required from their parents and ADC which was their principal source of support with Connie and with the Slaters.

■ As in all child custody disputes the determinative factor is the best interests of the children. The rebuttable presumption favoring natural parents of §§ 633.559 and 633.571 is fully applicable. The burden was on Mr. Slater to establish that the best interests of the children required his appointment as their custodian. Furthermore, the proceeding was in equity and our review of the trial court's ruling is de novo. *In re Guardianship of Plucar*, 247 Iowa 394, 72 N.W.2d 455 (1955); see § 633.33, The Code.

■ The evidence in the present case fell short of establishing that the best interests of Robbie and Constance required their custody be awarded to Mr. Slater. At the time of the hearing Connie had been through a period of marital instability but was attempting to reconcile with her husband. Robbie had been in her care for all his life except for a few months in 1974. A social service worker who had visited in Connie's various homes 14 times between April 1975 and January 1976 said she was cooperative

and had a good relationship with Robbie. Although some of Connie's housing had not been suitable, this problem was primarily due to economic stress. She had a nice apartment at the time of the hearing. The social worker testified she had done well in taking care of Robbie. Her only criticism of his adjustment was a suggestion he might need more discipline. She said the boy was healthy. A former neighbor and an aunt who was a registered nurse testified Connie was a good mother. The children's father also testified in support of her custody claim.

The evidence showed the Slaters lived in a trailer home in New Virginia. Mr. Slater had lost one leg and Mrs. Slater had lost both legs, although she wore prostheses. Several persons testified positively about them, their home, and their care of Constance. The only negative testimony was a claim by Connie and her aunt that the Slaters favored Constance over Robbie.

■ Our cases have emphasized that parents should be encouraged in time of need to look for help in caring for their children without risking loss of custody. The presumption preferring parental custody is not overcome by a mere showing that such assistance was obtained. Nor is it overcome by showing that those who provided the assistance love the children and would provide them with a good home. These circumstances are not alone sufficient to overcome the preference for parental custody. See *Hulbert v. Hines*, 178 N.W.2d 354, 361–362 (Iowa 1970), and citations. No greater showing was made here. The evidence was insufficient to defeat Connie's right to custody. Having in mind the presumption preferring parental custody, the principle against separating siblings and all of the other factors which must be considered in determining what custodial arrangement will best serve the long-range interests of the children, we find the trial court should have awarded their custody to their mother. See *Doan Thi Hoang Anh v. Nelson*, 245 N.W.2d 511 (Iowa 1976); *In re Marriage of Winter*, 223 N.W.2d 165 (Iowa 1974).

Connie's application for termination of the guardianship and conservatorship should have been sustained.

REVERSED.