**IN THE COURT OF APPEALS OF IOWA**

No. 16-1343
Filed March 8, 2017

**IN THE INTEREST OF R.T.,**
**Minor Child,**

**K.T., Grandmother,**
        Petitioner-Appellee,

**R.N., Mother,**
        Respondent-Appellant.
_____


Appeal from the Iowa District Court for Pottawattamie County, Craig M.

Dreismeier, District Associate Judge.


A mother appeals the termination of her parental rights under Iowa Code

chapter 600A (2016).  **REVERSED AND REMANDED.**


J. Joseph Narmi, Council Bluffs, for appellant mother.

Stephen C. Ebke of Ebke Law Office, Council Bluffs, for appellee

grandmother.

David J. McCann of Law Offices of David J. McCann, Council Bluffs,

guardian ad litem for minor child.


Heard by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A mother, Rachel, appeals the juvenile court's order terminating her parental rights to her eight-year-old daughter, R.T., who has been under the legal guardianship of her paternal grandmother, Kris, since 2011. Rachel argues she did not abandon R.T. within the meaning of Iowa Code section 600A.8(3)(b) (2016) and termination of her parental rights would not be in R.T.'s best interests. After our independent review of the record,[1] we find Kris failed to prove the statutory grounds for abandonment. Accordingly, we reverse the order of the juvenile court.

## I.    Facts and Prior Proceedings

Rachel and John are the unmarried parents of R.T., who was born in August 2008. When their daughter was born, Rachel and John were living with John's parents, Kris and Larry. In 2009, the police found drug paraphernalia in the bedroom occupied by Rachel and John, spurring their entry into substance-abuse treatment. R.T. remained with her grandparents. R.T. returned to her parents' care a few months later, but in 2011, Rachel and John both relapsed.

In December 2011, Rachel and John consented to placing R.T. in a legal guardianship with Kris and Larry. All agreed the guardianship would last until R.T. was eighteen years old, unless Rachel and John were able to provide a safe living environment for R.T. before then. In the ensuing years, Kris and Larry

---

[1] We review chapter 600A termination proceedings de novo. *See In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). We are not bound by the fact-findings of the juvenile court, but we do give them weight, particularly when considering witness credibility. *See id.* The child's best interests are "paramount" in our analysis, but we also give "due consideration" to the parents' interests. *See* Iowa Code § 600A.1.

retained physical care of R.T. The grandparents considered "letting [R.T.] go back" to her mother's care in 2014 when Rachel was sober and appeared to be turning her life around; R.T. spent alternating weekends in her mother's care during a period of about four months.

Rachel and John's second daughter was born in 2014. In 2015, Rachel's relationship with John ended. In October 2015, Larry, who was a father figure to Rachel, died. As "things started falling apart," Rachel relapsed. As a result, Rachel and John placed their second daughter in a guardianship with her maternal grandparents.[2]

During this time frame, Kris started placing restrictions on Rachel's visitation with R.T., requiring Rachel to schedule visits ahead of time, arrive sober, and refrain from asking Kris for money at the visits.[3] After Kris began to suspect Rachel was stealing from her, she stopped allowing visits in her home. Rachel became less reliable, often failing to attend scheduled visits or showing up late. Rachel's contact with R.T. decreased to two or three times each month, according to Kris's testimony.

On March 1, 2016, Kris filed a petition to terminate Rachel's parental rights.[4] One month later, Rachel was arrested for possession of methamphetamine and marijuana. Rachel pleaded guilty and received a deferred judgment before the July 7, 2016 termination hearing.

---

[2] Rachel and John's younger daughter, now two years old, was not a subject of the termination proceeding.

[3] Kris imposed the visitation restrictions informally. She did not report her concerns to the court in the guardianship proceeding.

[4] Kris also petitioned to terminate her son John's parental rights. Before the hearing, John consented to the termination of his parental rights in accordance with Iowa Code section 600A.8(5). He is not a party to this appeal.

At the hearing, Rachel resisted the termination petition, testifying to the strong bond between her and R.T. and her aspirations to resume custody of R.T. in the future. Rachel acknowledged she could not presently care for R.T. on her own and requested the guardianship continue. Kris countered with concerns related to Rachel's substance abuse. The guardian ad litem (GAL) did not make a recommendation regarding termination at the hearing, but in a written report to the court, he asked the court to "hold Petitioner to strict proof of the requirements of Chapter 600A of the Iowa Code in order to protect the best interests of [R.T.] and for such other relief as is just an[d] equitable in the circumstances."[5]

Following the hearing, the court terminated Rachel's parental rights under Iowa Code section 600A.8(3)(b). Rachel appeals the juvenile court's order.

## II. Did the record support a finding of abandonment?

Rachel first contends Kris did not prove she abandoned R.T. Under Iowa Code section 600A.2(19), a parent has abandoned a minor child when the parent "rejects the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." We find abandonment in cases of children older than six months if the parent fails to maintain "substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means," and if the parent has not lived with the child in the year before the termination hearing, by (1) visits with

---

[5] The GAL reported speaking to Rachel but did not mention any communication with Kris, John, or R.T.

the child at least once a month when physically and financially able and when not prevented by the child's custodian or (2) regular communication with the child or their custodian when physically and financially unable to visit or when visits are prevented by the child's custodian.   *See* Iowa Code § 600A.8(3)(b).

At the outset, Rachel advances a general position that she should not be "punished" for making the "responsible decision" of establishing a guardianship for R.T.  Quoting *In re Guardianship of Sams*, 256 N.W.2d 570, 573 (Iowa 1977), she asserts "parents should be encouraged in time of need to look for help in caring for their children without risking loss of custody."  While we agree with the sentiment expressed in *Sams*, placing R.T. in a voluntary guardianship does not forever insulate Rachel from termination of her parental rights if Kris has proven the relevant statutory grounds.[6]  *See, e.g.*, *In re G.B.*, No. 14-1691, 2015 WL 4493354, at *4–5 (Iowa Ct. App. July 22, 2015); *In re B.B.*, No. 12-1161, 2013 WL 99136, at *1–2 (Iowa Ct. App. Jan. 9, 2013).  Accordingly, we proceed with our analysis under the framework of section 600A.8(3)(b).

### A. Economic Contributions

We first consider Rachel's economic contributions to R.T., the threshold element of "substantial and continuous or repeated contact."   *See* Iowa Code

---

[6] *Sams*, which addresses an application for termination of a guardianship rather than a termination-of-parental-rights proceeding, acknowledges in some situations termination of parental custody could be appropriate:

> The presumption preferring parental custody is not overcome by a mere showing that such assistance was obtained.  Nor is it overcome by showing that those who provided the assistance love the children and would provide them with a good home.  *These circumstances are not alone sufficient to overcome the preference for parental custody.*  No greater showing was made here.

256 N.W.2d at 573 (emphasis added) (citing *Hurlbert v. Hines*, 178 N.W.2d 354, 361–62 (Iowa 1970) (noting the "presumption of parental preference as to custody" is rebuttable and the best interests of the child are the "primary consideration")).

§ 600A.8(3)(b); *see also In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012). This element requires Rachel to contribute a reasonable amount toward R.T.'s support in accordance with her means. *See* Iowa Code § 600A.8(3)(b). The amount is not limited to court-ordered support, which is the subject of a separate provision. *See W.W.*, 826 N.W.2d at 710; *see also* Iowa Code § 600A.8(4).

Although Rachel occasionally provided R.T. with donated second-hand clothing and other gifts, it is undisputed Rachel did not provide R.T. with monetary support after the guardianship was established in 2011. Rachel contends she is willing to contribute toward R.T.'s support moving forward but did not know she was obliged to do so to avoid termination of her parental rights. She emphasizes Kris never asked her for money.[7] Kris responds that section 600A.8(3)(b) requires Rachel to contribute to R.T.'s care whether asked to do so or not.

Under the circumstances of this case, we find Rachel adequately "provide[d] for the support of the child" under section 600A.2(19) by voluntarily placing R.T. in a guardianship with her financially stable paternal grandparents, thereby ensuring the child's monetary needs were met and safeguarding the child's wellbeing. *See* Iowa Code § 633.635(1)(a) (noting guardian is responsible for "[p]roviding for the care, comfort and maintenance of the ward"). The parties agree Rachel did not have the means to provide for R.T. at the time the guardianship was established. And after that time, Rachel, who continued to struggle with addiction, was only sporadically employed. *See In re E.S.*, No. 16-

---

[7] In fact, Kris would purchase presents for R.T. that were intended to be from Rachel and John, enabling the parents to appear to be providing for their daughter.

0066, 2016 WL 7403746, at *3 (Iowa Ct. App. Dec. 21, 2016) (finding mother met threshold requirement when she did not have the means to provide for children for two years as a result of her failure to treat a mental-health condition and lack of stable employment). Accordingly, we find Kris did not meet her burden of demonstrating Rachel declined to provide financial support despite an ability to do so.[8]

### B. Visitation

We next consider whether Rachel's regular visitation with R.T. precludes a finding of abandonment. *See* Iowa Code § 600A.8(3)(b)(1). We conclude it does. The juvenile court found Rachel's visits with R.T. had decreased to less than once a month, but the testimony from the termination hearing conflicts with that finding. When asked on cross-examination how often Rachel had visited R.T. in the six months preceding the termination hearing, Kris responded: "Approximately two to three times a month."

But still, Kris urges us to find Rachel's record of interaction with R.T to be inadequate. She characterizes Rachel's attempts at visitation as "at best, only a marginal effort to maintain contact" and cites *In re C.A.V.*, 787 N.W.2d 96, 101 (Iowa Ct. App. 2010), for the proposition that superficial visitation can demonstrate a parent's intent to abandon a child. We find *C.A.V.* distinguishable. The finding of abandonment in *C.A.V.* was based upon not only the father's

---

[8] We note the act of placing a child in a guardianship does not automatically relieve a parent from providing financial support, *see In re P.N.*, No. 14-0674, 2014 WL 4937995, at *1–2 (Iowa Ct. App. Oct. 1, 2014) (considering father's economic support in abandonment analysis when the son was under a guardianship with his maternal grandparents), but in this limited situation—in which Rachel did not have the means to provide for R.T., no child-support order was established, and the guardians did not request any financial assistance—Rachel's actions did not meet the threshold element for termination.

feeble attempts at building a relationship in the first thirteen months of his daughter's life but also the nearly three years of complete absence from her life that followed while the father was incarcerated. 787 N.W.2d at 101–02. Kris alleges no comparable prolonged absence here, she does not explain how the quality of Rachel's visitation decreased, and she does not cite any other authority in support of her claim. Accordingly, we find Kris failed to meet her burden of proving abandonment under section 600A.8(3)(b).

### III. Was termination in R.T.'s best interests?

But even had we determined the requirements for abandonment were satisfied, we would reverse the juvenile court order because Kris failed to demonstrate termination of Rachel's parental rights was in R.T.'s best interests. R.T.'s best interests require that Rachel "affirmatively assume[s] the duties encompassed by the role of being a parent." *See* Iowa Code § 600A.1. We consider "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *See id.* In addition, we consider the physical, mental, and emotional needs of the child and the strength of the parent-child bond. *See In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010).

Emphasizing Rachel's continuing struggle with addiction and her overall lack of financial stability, Kris contends termination of Rachel's parental rights is in R.T.'s best interests. But despite Rachel's difficulties, the record demonstrates she has maintained a place of importance in R.T.'s life. Rachel testified R.T. called her "Mom" and was upset about the possibility of Rachel's rights being

terminated. Although Kris did not testify directly about the mother-daughter relationship, Kris's actions—encouraging liberal visitation—and the statements in her periodic guardianship reports—confirming Rachel has maintained significant contact with R.T. over the years—point to a strong bond between the eight-year-old and her mother. Moreover, by all accounts, R.T. was thriving under the guardianship arrangement. On this record, we cannot find that termination was in R.T.'s best interests.

**REVERSED AND REMANDED.**