Isabel A. ZVORAK, Appellant,

v.

Anita BEIREIS, Appellee.

No. 93–804.

Supreme Court of Iowa.

July 27, 1994.

Susan Larson Christensen, Harlan, for appellant.

G. Elizabeth Otte, Council Bluffs, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

CARTER, Justice.

This is a child custody dispute. The appellant, Isabel A. Zvorak, is the maternal grandmother of six-year-old Ashley Beireis. The child has lived in her grandmother's home during most of her lifetime. The child's mother is the appellee, Anita Beireis. From December 1987, when Ashley was ten months old, until sometime in 1992, she only maintained intermittent contact with her daughter and has provided almost no financial contribution toward her support.

Sometime in the fall of 1992, while the child's mother was living in Minnesota, the child's maternal grandmother, who lives in Walnut, Iowa, learned that the mother intended to take the child from her custody. At this time, legal action was taken, which resulted in the grandmother, Isabel, being appointed as the child's guardian. The order from which the present appeal is taken was entered in response to the application of the mother, Anita, for (1) termination of the

guardianship, and (2) the establishment of Ashley's legal custody in herself. Following a hearing on that application, the district court declined to terminate the guardianship at this time but placed physical custody of Ashley with her mother on a six-month trial basis. That order has been stayed pending Isabel's appeal.

Ashley was born in Minneapolis, Minnesota, on February 19, 1987. At this time, Anita was eighteen years of age. She had dropped out of high school in Minneapolis during eleventh grade. Following her birth, Ashley resided with her mother and Isabel at the latter's residence in Minnesota. After about six months, Anita tried unsuccessfully to live outside Isabel's home with the child and the child's natural father. In December 1987, Anita again placed the child in Isabel's home and moved elsewhere herself. In 1990, Isabel, currently age forty-nine, moved with Ashley to Walnut, Iowa, to reside with her third husband, Harold Zvorak, now age sixty-seven. During the time that Ashley has been living with her grandmother, the child's mother, Anita, has lived in sixteen different residences shared with at least ten different male companions. Since Ashley was born, Anita has had an abortion, a miscarriage, and a live birth that resulted in the child being placed for adoption.

Shortly after Isabel was appointed Ashley's guardian in November 1992, Anita moved to Iowa and obtained employment at a sporting goods store in Atlantic. She also holds a second job at a care center in Griswold, Iowa. Her net income from that employment is barely more than her rent. She resides in a one-bedroom apartment in Atlantic. After Anita's move to Iowa in 1992, Isabel has allowed her to maintain visitation with Ashley outside Isabel's home from 4 p.m. on Friday to 4 p.m. on Sunday every other weekend. A court-ordered home study investigation of Anita's situation commented favorably on the relationship that has been developing between Anita and her daughter.

Isabel, who has been involved in the antique business, currently operates a doll shop in Walnut. Her income from that activity is approximately $800 per month. In addition to the doll shop earnings, Isabel receives $690 per month in child support for a fifteen-year-old daughter by her second husband. Isabel's present husband, Harold, receives social security income of $366 per month. Between them, they have accumulated savings of approximately $55,000. They reside in a three-bedroom home owned by Harold that is fully paid for. In addition to Ashley, Isabel's daughter Michelle, age fifteen, and son, Curt, age twenty-two, reside in that home.

Ashley's natural father, Linh Nguyn, is not a party to this litigation. He resided in Minneapolis at the time of Ashley's conception and has since moved to Boston, Massachusetts. He has provided almost no financial support for Ashley but has visited her frequently. Linh Nguyn has maintained a cordial relationship with Isabel during most of Ashley's life. That situation has recently changed when he indicated support for Anita's efforts to obtain custody of the child.

Following the hearing on Anita's application, the court left the record open for submission of home study reports. Anita's home study revealed that she had a history of being physically and sexually abused by Isabel's second husband. The investigator found that Anita loved her daughter, was self-supporting, had dealt satisfactorily with her childhood abuse, and was well thought of by friends and employers. Isabel's home study noted that she too had been sexually abused as a child and physically abused by her first two husbands. The investigator found "nothing that would indicate that Isabel could not provide Ashley with a safe and stable environment." These home study investigations were performed by different persons, so no comparison of households was made.

▄▄▄ This court has had frequent opportunities to consider disputes wherein persons who have cared for the children of another have attempted to retain custody against the wishes of the natural parent. *See, e.g., In re Sams,* 256 N.W.2d 570 (Iowa 1977); *Doan Thi Hoang Anh v. Nelson,* 245 N.W.2d 511 (Iowa 1976); *Hulbert v. Hines,* 178 N.W.2d 354 (Iowa 1970); *Garvin v. Garvin,* 260 Iowa 1082, 152 N.W.2d 206 (1967); *Halstead v. Halstead,* 259 Iowa 526, 144 N.W.2d 861

(1966); *Alingh v. Alingh,* 259 Iowa 219, 144 N.W.2d 134 (1966); *Painter v. Bannister,* 258 Iowa 1390, 140 N.W.2d 152, *cert. denied,* 385 U.S. 949, 87 S.Ct. 317, 17 L.Ed.2d 227 (1966); *Vanden Heuvel v. Vanden Heuvel,* 254 Iowa 1391, 121 N.W.2d 216 (1963); *McKay v. McKay,* 253 Iowa 1047, 115 N.W.2d 151 (1962); *McKay v. Ruffcorn,* 247 Iowa 195, 73 N.W.2d 78 (1955); *In re Plucar,* 247 Iowa 394, 72 N.W.2d 455 (1955); *Risting v. Sparboe,* 179 Iowa 1133, 162 N.W. 592 (1917). As in all child custody cases, the determining factor is the best interests of the child. *Sams,* 256 N.W.2d at 572; *Hulbert,* 178 N.W.2d at 361.

The determination of a child's best interests, however, must take into account the strong societal interest in preserving the natural parent-child relationship. The parents of minor children if qualified and suitable are preferred over all others for appointment as their guardians. Iowa Code § 633.559 (1993). As we stated sixty-seven years ago:

> Something more than the material things of life is essential to the nurture of a child, and that something is the father's and the mother's love, or as near its equivalent as may be. Recognizing this, the law raises a strong presumption that the child's welfare will be best subserved in the care and control of parents, and in every case, a showing of such relationship, in the absence of anything more, makes out a prima facie case for parents claiming custody of their children. "Indeed," as said in one case, "this presumption is essential to the maintenance of society, for without it, man would be denaturalized, the ties of family broken, the instincts of humanity stifled, and one of the strongest incentives to the propagation and continuance of the human race destroyed."

*Risting,* 179 Iowa at 1136–37, 162 N.W. at 594. To this we added:

> Recognition of what is for the best interest of the child will seldom interfere with the natural rights of the parent to the custody thereof, and never unless essential to its welfare or for the good of society.

*Id.* at 1138–39, 162 N.W. at 594.

In applying these principles, we have acted in some cases to remove children from con-scientious, well-intentioned custodians with a history of providing good care to the children and placed them with a natural parent. *E.g., Sams,* 256 N.W.2d at 273; *Hulbert,* 178 N.W.2d at 361–62. In other situations, we have declined to do this on the ground that such action would not promote the child's best interests. *E.g., Painter,* 258 Iowa at 1396, 140 N.W.2d at 156.

■ Our previous cases in this area have, for the most part, produced final determinations of the custody disputes at issue. Whether initiated via a habeas corpus petition or some other procedural device, the result has been a trial in equity resulting in a final adjudication of permanent custody. The somewhat tentative disposition that the district court made in the present case differs noticeably from that approach. It more nearly resembles the type of order invoked in juvenile court proceedings when a child removed from the custody of an unstable parent pursuant to CINA adjudication is later returned to that parent under a supervised placement. Although this type of disposition is not the norm, there is reason to approve it in the present case.

It is significant, we believe, that the child's grandmother, Isabel, does not oppose, and indeed supports, the goal of Anita to take responsibility for her daughter's care. The dispute concerns whether Anita presently possesses the necessary commitment to serve the total parenting role for Ashley. Without a doubt, Anita's parenting ability is still open to question. On the other hand, the extent of that ability may not be accurately established unless she is permitted to demonstrate it in actual practice. The district court sought to resolve this dilemma by establishing a six-month trial period during which Anita's parenting commitment may be tested. We find that this was a reasonable solution that protects the interests of both Anita and Ashley.

Isabel argues that the district court lacked authority to place custody of Ashley with Anita while, at the same time, allowing Isabel to continue as the child's guardian. The basis for that contention is the interpretation placed on Iowa Code section 633.3(19) in *In re Reed,* 426 N.W.2d 657 (Iowa App.1988).

In that case, the court of appeals held that, because section 633.3(19) defines a guardian as being the person who has custody of the ward, custody may not be placed in one who is not the guardian. *Id.* at 658–59. This court expressly approved that interpretation in *In re Reed,* 468 N.W.2d 819, 822 (Iowa 1991).

We are not convinced that the legal proposition established in *Reed* precluded the district court from acting as it did in the present case. We do not view the six-month placement of the child in Anita's care as a transfer of legal custody. It appears that the court deliberately sought to preserve that status in the existing court-appointed guardian as a check on Anita's authority during the period of temporary placement. The potential for conflict between the guardian and Anita with respect to decisions involving Ashley's welfare, although undesirable, is minimized by the fact that the court has now assumed the role of superior guardian with oversight review on a regularly scheduled basis.[1] *See In re Ankeney,* 360 N.W.2d 733, 736 (Iowa 1985).

Because more than a year has transpired since the time of the district court's order, we must recognize the possibility that the situation of the parties may have changed in some material aspect during that time. For this reason, we direct that, upon receipt of the procedendo from this court, the district court schedule a hearing on this matter to ascertain whether the situation of the parties is sufficiently similar to that which existed in May of 1993 that the order entered at that time is still appropriate. If it appears that current circumstances so warrant, the court shall have authority to make any other appropriate order in the guardianship proceeding. The stay of the May 19, 1993 order by direction of this court shall remain in force until further action by the district court.

**AFFIRMED AND REMANDED.**

---

**1.** We are cognizant that the district court is somewhat hampered in its goal by reason of a lack of auxiliary personnel to supervise its placement. *See Iowa Dep't of Social Servs. v. Blair,* 294 N.W.2d 567, 569–70 (Iowa 1980) (district court in other proceedings does not have authority to utilize remedies that are limited by statute to juvenile court proceedings).