**In the Matter of the GUARDIANSHIP OF Bradley Leroy STODDEN.**

**Upon the Petition of**

**Charlene Diane Stodden, Petitioner–Appellee,**

**And Concerning**

**Karen Louise Stodden, Respondent– Appellant.**

**In re the MARRIAGE OF Larry Dean STODDEN and Karen Louise Stodden.**

**Upon the Petition of**

**Larry Dean Stodden, Petitioner,**

**And Concerning**

**Karen Louise Stodden, Respondent– Appellant.**

No. 96–1048.

Court of Appeals of Iowa.

June 26, 1997.

Kermit L. Dunahoo and Jon C. Tack of the Dunahoo Law Firm, Des Moines, for appellant.

G. Stephen Walters of Jordan, Oliver & Walters, P.C., Winterset, for appellee.

Bryan R. Jennings of the Riech Law Firm, Adel, guardian ad litem for minor child.

Heard by HABHAB, C.J., and CADY and VOGEL, JJ. STREIT, J., takes no part.

HABHAB, Chief Judge.

Karen and Larry Stodden were married in 1987. Their only child, Bradley, was born on January 30, 1989. In May 1990, Larry filed a petition for dissolution of marriage and was subsequently awarded temporary custody of Bradley. On October 30, 1990, the court dissolved the marriage and awarded Larry primary physical care of Bradley. Karen was ordered to pay child support in the amount of $105 per month and granted liberal visitation.

Following the dissolution, Karen overdosed on medication and was hospitalized. She was diagnosed with bipolar affective disorder, by history, borderline personality disorder, and status post-Tegretol overdose. Upon her release, Karen failed to follow the recommended care through the Adel Mental Health Center. In November 1990, the court suspended the visitation provisions of the decree due to Karen's problems with mental illness and allowed her only supervised visitation with Bradley. The trial court determined:

> [S]upervised visitation will be lifted as soon as a competent treating psychiatrist reports to this court that Bradley LeRoy

Stodden will be safe, and well cared for, during the visitation provided for in the court's October 30, 1990, decree.

In August 1991, Karen moved from Perry, Iowa to the State of Missouri. She married Phillip Adams on December 28, 1995, and they have one child, Tristan.

In August 1992, Larry and his girlfriend, Charlene, began living together. At that time, Charlene assumed Bradley's primary care. Larry and Charlene were married on October 7, 1995.[1] However, on December 12, 1995, Larry was killed in a work-related accident.

On December 18, 1995, Charlene filed a petition seeking to be appointed Bradley's guardian and was subsequently appointed his temporary guardian. On December 21, 1995, Karen filed an application for writ of habeas corpus or application for immediate turnover of Bradley. The court consolidated the cases. After a hearing, the court awarded Charlene guardianship of Bradley and granted Karen visitation. It also dismissed Karen's application for writ of habeas corpus or immediate turnover of child. It determined Charlene would best meet Bradley's long-term best interests.

Karen appeals. She contends Charlene did not rebut the presumption of parental custody. She also argues the conclusions reached in the custody evaluation are unsupported by the facts. She further urges the court erred in failing to consider the separation of Tristan and Bradley, and in finding Bradley preferred to remain with Charlene.

Charlene maintains the district court's decision was proper and argues the issues of the trial court's reliance on the custody evaluation report, separation of Tristan and Bradley, and Bradley's preference to remain with her, have not been preserved for appellate review. The guardian ad litem recommends Bradley remain with Charlene, and requests the court award him appellate guardian ad litem fees.

As this matter was tried in probate as a proceeding in equity, our review is de novo.

Iowa Code § 633.33; *In re Interest of Rohde,* 503 N.W.2d 881, 882 (Iowa App.1993). We give weight to the findings of fact made by the trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App. P. 14(f)(7).

■ **I. Rebuttal of Parental Preference.** "The parents of [a] minor [child] if qualified and suitable are preferred over all others for appointment as their guardians." *Zvorak v. Beireis,* 519 N.W.2d 87, 89 (Iowa 1994)(citing Iowa Code § 633.559).

> Something more than the material things of life is essential to the nurture of a child, and that something is the father's and the mother's love, or as near its equivalent as may be. Recognizing this, the law raises a strong presumption that the child's welfare will be best subserved in the care and control of parents, and in every case, a showing of such relationship, in the absence of anything more, makes out a prima facie case for parents claiming custody of their children. "Indeed ... this presumption is essential to the maintenance of society, for without it, man would be denaturalized, the ties of family broken, the instincts of humanity stifled, and one of the strongest incentives to the propagation and continuance of the human race destroyed."
>
> . . . .
>
> Recognition of what is for the best interest of the child will seldom interfere with the natural rights of the parent to the custody thereof, and never unless essential to its welfare or for the good of society.

*Id.* (citing *Risting v. Sparboe,* 179 Iowa 1133, 1136–39, 162 N.W. 592 (1917)).

■ The presumption of preference in favor of a natural parent, however, is rebuttable. *See In re Guardianship of Knell,* 537 N.W.2d 778, 781 (Iowa 1995). The burden of proof rests with Charlene to rebut the presumption which favors Karen by establishing Bradley's best interest requires that he remain in her care. *See id.* "In determining the child's best interest, we must take into

---

1. Initially, at the age of twenty-two months, Bradley was in the custody of his father, Larry; and since August 1992, he was in the care of Larry and his wife, Charlene. Since Larry's death, Bradley has been solely in the physical care of Charlene.

account the strong societal interest in preserving the natural parent-child relationship." *Id.* (citing *Zvorak,* 519 N.W.2d at 89). Also, we must consider the long-range interest as well as the immediate interest of the child. *Id.* (citing *In re Guardianship of Sams,* 256 N.W.2d 570, 573 (Iowa 1977)).

■ At the time of the March 1996 hearing, Bradley was seven years old. The record reveals that since Larry and Charlene began living together in 1992, Charlene has provided Bradley's primary care. Although Karen was permitted supervised visitation,[2] she elected to relocate to Missouri and as a result has visited him only once every two to three months. Although ordered to pay support for Bradley, except for a small amount obtained involuntarily, she has failed to do so. She frequently failed to inform Larry of her whereabouts or how she could be reached; however, she has maintained telephone contact with Bradley and corresponds with him.

During their marriage, Karen and Larry shared a turbulent relationship. Both were arrested for domestic abuse on more than one occasion. Soon after the divorce was final, Karen was arrested for assaulting another individual.

In 1989, ten months after Bradley's birth, Karen was first involuntarily hospitalized for psychiatric reasons. At that time she was diagnosed as having bipolar affective disorder. She was hospitalized for about one week. She then returned to the hospital voluntarily two weeks later. Larry reported she had been taking her medication at the wrong times and in incorrect amounts. Karen remained in the hospital for two weeks and was discharged and prescribed medication.

As previously noted, Karen was involuntarily hospitalized again in 1990. The record reflects she overdosed on medication immediately after learning Larry was awarded permanent primary physical care of Bradley. After her discharge, she failed to follow through with recommended treatment at the

Adel Mental Health Center. She has also been noncompliant with prescribed medication. We note, however, Karen's condition now appears to be somewhat more stable, and although she has not been compliant with recommended treatment, she has not been treated for any related problems since the 1990 episode.

Karen argues that as the trial court has found her to be a suitable custodian and capable of providing for Bradley's basic needs, Charlene has failed to successfully rebut the presumptions of parental preference favoring her. We disagree. Although Karen's condition has apparently become more stable, our inquiry into the best interests of Bradley encompasses what is in his immediate and long-term best interest.

In making his recommendation regarding Bradley's custody, the custody evaluator, William Pearce, stated:

2. Bradley has suffered the loss of his father. In his eyes, Charlene is the next closest person to him, serves as his other parental figure, and he is surrounded by the places and persons that have been most familiar in his life. To be removed now would be to suffer another equal loss and add to his grief. I believe that this would be very detrimental to Bradley.

3. [Karen's] home in Missouri is not an inadequate home. It may most accurately be described, in fact, as "adequate." The home with Charlene, on the other hand, would be described as "excellent."

**It Is Recommended:**

That Bradley be placed in the guardianship of Charlene Stodden, with reasonable visitation with his mother. Supervision is not necessary.

"If return of custody to the child's natural parent 'is likely to have a seriously disrupting and disturbing effect upon the child's development, this fact must prevail.'" *Id.* at 782 (citing *Painter v. Bannister,* 258 Iowa 1390, 1396, 140 N.W.2d 152, 156 (1966)). The record reveals return of Bradley to Karen at

---

2. Bradley was approximately twenty-two months old when Karen's regular visitation was suspended. He is now almost eight years of age. Since the summer of 1995, Karen has visited Bradley but one time. For a period in excess of five years, Karen has made no attempt to implement normal visitation with Bradley.

this time would be seriously detrimental to Bradley's well-being. The passage of time carries considerable weight in our determination. *See id.* at 783.

> [I]f a person having lawful care of a child has properly provided for a child's social, moral and educational needs for a substantial period of time and the child has become attached to that environment and those responsible for his [or her] welfare and happiness, a court is not justified in transferring that custody to another except for the most cogent reasons.

*Id.* at 782 (citing *Doan Thi Hoang Anh v. Nelson,* 245 N.W.2d 511, 517–18 (Iowa 1976)). We note Charlene shares a very good relationship with Bradley and has provided for his primary care for the majority of his life. She resides just two blocks from Larry's parents (Bradley's grandparents) who are active in Bradley's life and often provide child care for him. Two of Larry's siblings also live near the area and share a close relationship with Bradley. Charlene has worked to foster a good relationship between Bradley and Karen and she recognizes the need for Bradley to have visitation with her.

> A parent who failed to develop a relationship with his or her child while that child is establishing a family relationship with a stepparent must recognize the child thereby puts down roots that are of critical importance. Courts must carefully deal with those roots in determining the child's best interest.

*Id.* at 783.

Although Karen has the ability to provide an adequate home for Bradley, we find it would not be in Bradley's best interest that she have custody of him at this time. *See id.* In our de novo review of the record, we find the district court appropriately appointed Charlene as Bradley's guardian and granted Karen liberal unsupervised visitation with him.

*II. Miscellaneous.* Karen argues the district court erred in considering William Pearce's custody evaluation as he failed to consider the presumption of parental preference when compiling the evaluation. She also maintains the court erred in considering Bradley's stated preference to remain with Charlene. Finally, she argues the trial court erred in failing to consider the impact of Bradley's separation from Tristan, her son from her subsequent relationship.

From our de novo review of the record, we find her arguments with regard to these issues are without merit. The trial court accorded the appropriate weight to the custody evaluation and Bradley's stated preference to remain with Charlene. With regard to Karen's allegations the court should have considered the separation of Bradley from his half-brother Tristan, the record reveals Bradley has only seen Tristan on one occasion. The custody evaluation indicated Bradley was unsure as to whether Karen had any other children. As these brothers have never effectively been together and share no relationship, we cannot say it would be of further detriment to Bradley to be "separated" from Tristan.

*III. Guardian Ad Litem Fees.* The guardian ad litem's request that this court enter an order allowing trial and appellate fees for his services must be denied. He implies that authority for his fees may be found in Iowa Code section 633.561(3), which states in part:

> If the proposed ward is entitled to representation and is indigent or incapable of requesting counsel, the court shall appoint an attorney to represent the proposed ward. The cost of court appointed counsel for indigents shall be assessed against the county in which the proceedings are pending.... The court shall find a person is indigent if the person's income and resources do not exceed one hundred fifty percent of the federal poverty level or the person would be unable to pay such costs without prejudicing the person's financial ability to provide economic necessities for the person or the person's dependants.

Assuming, without deciding, the guardian ad litem is entitled to fees under section 633.561(3), it is clear that if such fees are allowed, they are to be assessed against Dallas County. Generally a nonparty cannot be taxed with such costs, absent statutory authority. *Scott County v. Iowa Dist. Court,* 397 N.W.2d 754, 755 (Iowa 1986).

■ There is statutory authority for the taxing of attorney fees to a nonparty under that section. However, in the *Scott County* case, our supreme court held that a claim of indigence under section 598.12(3) triggers notice and hearing requirements of due process in favor of a county who may be ordered to bear such costs. *Id.* at 755. In so holding, the court stated:

> When indigence becomes an issue in determining who will pay court costs, the court must order that the county be given notice by service on the county attorney and an opportunity to be heard on the issues of the indigence of the parties and the reasonableness of the fees sought to be taxed as costs. The court will also specify who is responsible for serving notice on the county attorney. The notice should also specify the amount of fees sought to be taxed as costs to the county.

> Alternatively, the county could petition to intervene if it becomes aware of the appointment of counsel or the authorization ... in a case where indigency may become an issue. Failure by the county to intervene, however, will not waive the notice and hearing requirements.

*Id.* at 756 (citations omitted). Similarly, we conclude it would be in excess of our judicial authority to order payment of the fees requested by the guardian ad litem against a nonparty under Iowa Code chapter 633 without notice and an opportunity to be heard. If fees are allowable under the circumstances of this case, a decision we do not make, and if they are to be assessed against Dallas County, that county is entitled to notice and an opportunity to be heard prior to any assessment of such fees. As an aside, we further note the issue of guardian ad litem fees was neither raised nor considered at the trial court level.

**AFFIRMED.**