**In re the MARRIAGE OF Robert J. HALVORSEN and Christine R. Halvorsen.**

**Upon the Petition of Robert J. HALVORSEN, Appellant,**

**And Concerning Christine R. Halvorsen, Appellee.**

No. 93–1490.

Supreme Court of Iowa.

Sept. 21, 1994.

Eric Borseth of Borseth & Genest Law Offices, Pleasant Hill, for appellant.

Constance Peschang Stannard, Iowa City, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

This appeal from a dissolution decree involves a custody dispute over a child who is not the biological child of the husband. The stepparent seeks custody of the child claiming that the mother should be equitably estopped from denying his paternity or that she waived her rights to deny his paternity. The district court found the husband was not the father of the child, nor was the mother equitably estopped from denying the husband's paternity. The court awarded sole custody to the mother and granted no visitation to the husband. We affirm.

I. *Background.*

The parties to this action met in April 1986 and initiated a sexual relationship. Each was married to another person at the time. Petitioner Robert Halvorsen (Bob) was in the process of divorcing his first wife when he met the respondent Christine Halvorsen, then Christine Baker (Chris). Chris and her husband, Gary Baker (Gary), were separated when she began the relationship with Bob. In the Spring of 1986 Chris discovered she was pregnant and told Bob that he was the child's father. Chris and Bob lived together before the child was born. Bob's divorce to his first wife was final in September 1986.

A child, named Nikki Lynn Baker (Nikki), was born in January 1987. At that time Chris was married to Gary, but she had filed for a dissolution of the marriage nine days before Nikki's birth. After Nikki was born, Bob and Gary voluntarily consented to blood tests to determine which one was Nikki's father. The parties expected the blood tests conducted by the Memorial Blood Center of Minneapolis, Inc. would exclude Gary as the father and would establish that Bob is the father. The paternity test results came back in September 1987 and conclusively stated neither Bob nor Gary is the father of Nikki.

Bob claims that Chris convinced him that the blood tests were wrong and he was the father. Bob says he believed Chris and continued to treat Nikki as his own child. Chris' divorce from Gary was final in December of 1987. Bob and Chris married on April 22, 1988, when Nikki was fifteen months old.

In late October 1990, Bob and Chris signed a paternity affidavit indicating that Bob was Nikki's father. They filed the affidavit with the Bureau of Vital Statistics and received in November a copy of the new birth certificate changing Nikki's name to Nikki Lynn Halvorsen. In December 1990, Bob filed for divorce. He did not, however, serve the petition upon Chris until fourteen months later.

After serving Chris with the divorce petition, Bob requested temporary custody of Nikki. Chris resisted the application and stated that she was the natural mother of Nikki, who was born prior to the marriage, and that Bob was not Nikki's father. The parties traded discovery requests; and in answer to an interrogatory, Chris named Nikki's biological father.

Trial was held in July 1993. Bob argued that Chris should be equitably estopped from denying his paternity of Nikki. The court entered a decree concluding that Bob was not the biological father of Nikki and that Chris is not estopped from asserting Bob's non-paternity. The court refused to grant Bob custody or visitation of Nikki.

On appeal Bob argues Chris is equitably estopped or has waived her right to contest his paternity of Nikki. He asks that we recognize an equitable parent doctrine.

II. *Scope of Review.*

 This case was tried in equity by the district court. Therefore, our review is de novo. Iowa R.App.P. 4. Under de novo review we are not bound by the factual find-

ings of the trial court, but do give weight to them. Iowa R.App.P. 14(f)(7).

### III. *Equitable Parent Doctrine.*

▇ Bob asks that the court find that he is an "equitable parent" of Nikki. *See Atkinson v. Atkinson,* 160 Mich.App.Ct. 601, 408 N.W.2d 516 (1987). We have rejected the "equitable parent" doctrine. *Petition of Ash,* 507 N.W.2d 400, 401 (Iowa 1993). Even if we were to recognize the doctrine as defined in *Atkinson,* Bob would not satisfy the definitional requirement because he was not married to Chris at the time the child was born or conceived.

### IV. *Equitable Estoppel.*

▇ Bob argues that Chris should be equitably estopped from denying his paternity of Nikki. He asks this court to apply the doctrine of equitable estoppel to place him in the position of a biological parent so the court can treat him as a biological parent when considering custody, visitation, and support issues. If Bob is considered to be a biological parent, we would apply the best interests of the child standard when considering custody of Nikki, rather than using the more difficult burden of proof required to grant custody to a nonparent over a parent. *See In re Marriage of Reschly,* 334 N.W.2d 720, 721 (Iowa 1983). Equitable estoppel is a doctrine based on fair dealing, good faith, and justice. It seeks to prevent a person from speaking against his or her act, representation, or commitments to the injury of the person to whom the act or representation was directed and who reasonably relied thereon. *Johnson v. Johnson,* 301 N.W.2d 750, 754 (Iowa 1981).

▇ The burden of proving equitable estoppel is on the party asserting it. Each element must be proved clearly, convincingly, and satisfactorily. *Davidson v. Van Lengen,* 266 N.W.2d 436, 441 (Iowa 1978). The well-established elements of equitable estoppel are:

(1) A false representation or concealment of a material fact;

(2) A lack of knowledge of the true facts on the part of the actor;

(3) The intention that it be acted upon; and

(4) Reliance thereon by the party to whom made, to his or her prejudice and injury.

*Bricker v. Maytag Co.,* 450 N.W.2d 839, 841 (Iowa 1990); *Merrifield v. Troutner,* 269 N.W.2d 136, 137 (Iowa 1978).

▇ Although we apply the doctrine of equitable estoppel in various circumstances, we have not done so where paternity is the issue. If we were to recognize the doctrine in this case, we would find that Bob failed to demonstrate by clear and convincing evidence that he had a lack of knowledge of the true fact that he was not the biological father of Nikki. The trial court stated:

In this case there is no evidence that Robert ever had a lack of knowledge of the true facts. He knew that Christine was married to another man when he began an intimate relationship with her; he knew that she was not, in fact, faithful to her husband, at least with him; he knew that the test results showed that neither of the men he could reasonably believe had sex with her was the father. It is important that he even participated in the testing. If the sole purpose of the testing was to establish non-paternity of Mr. Baker, then Mr. Halvorsen did not need to be involved. He was, however, involved because his paternity was also in question. The question was answered. His claim of current ignorance is disingenuous. Willful ignorance is not a good substitute for "lack of knowledge of true facts on part of actor."

The action of Bob prior to filing the dissolution petition also suggests that he knew he was not the father of the child, whatever the representations of Chris might have been. He was very anxious to have his name put on the birth certificate and caused Chris to obtain a paternity affidavit from a lawyer. The affidavit falsely stated the mother was not legally married to anyone either at the time of the birth or at the time of conception of Nikki. *See* Iowa Code § 144.40 (1989). After he was named as the father on the revised birth certificate, he promptly filed for dissolution of marriage. Further, the child had always been known as Nikki Baker until

just before the dissolution of marriage proceedings were filed.

### V. *Award of Custody to Natural Parent.*

Bob challenges the court's award of sole custody of Nikki to Chris. He argues that the evidence shows it is in Nikki's best interest that custody be awarded to him.

In resolving a custody dispute, the primary consideration is the best interest of the child. Iowa R.App.P. 14(f)(15). There is, however, a presumptive preference for parental custody. *Reschly,* 334 N.W.2d at 721. A court may only grant a nonparent custody of a child over a parent when the nonparent proves that the parent seeking custody is not suitable to have custody. *Id.* We have observed on more than one occasion that "[c]ourts are not free to take children from parents simply by deciding another home offers more advantages." *In re Burney,* 259 N.W.2d 322, 324 (Iowa 1977); *see also In Interest of B.G.C.,* 496 N.W.2d 239, 241 (Iowa 1992); *DeBoer v. Schmidt,* ⸺ U.S. ⸺, ⸺, 114 S.Ct. 1, 2, 125 L.Ed.2d 755, 757 (1993) (per Stevens, J., Circuit Justice) ("Neither Iowa law, Michigan law, nor federal law authorizes unrelated persons to retain custody of a child whose natural parents have not been found to be unfit simply because they may be better able to provide for her future and her education.").

Bob is not the biological father of Nikki. Therefore, he is a nonparent seeking to gain custody over a parent. To succeed he must prove that Chris is an unsuitable custodian for Nikki. The trial court found, and we agree, that Chris is a fit and proper custodian for Nikki. Bob failed to prove that Chris is unsuitable to have custody of her daughter. Therefore, the court's grant of sole custody of Nikki to Chris was appropriate.

### VI. *Visitation.*

Bob argues that even if the court determines he is not entitled to custody of Nikki, as a stepparent he should be granted visitation. He essentially asks that we overturn a line of cases in which we have held that the court cannot grant visitation to nonparents over a parent's objections. *See Ash,* 507 N.W.2d at 404 (refusing to grant visitation to mother's former live-in boyfriend); *Lihs v. Lihs,* 504 N.W.2d 890, 892–93 (Iowa 1993) (holding no visitation available to half-siblings after death of common parent); *In re Marriage of Freel,* 448 N.W.2d 26, 27–28 (Iowa 1989) (granting no visitation to the former live-in girlfriend of child's father); *Olds v. Olds,* 356 N.W.2d 571, 573 (Iowa 1984) (no authority to grant visitation to maternal grandparents when their own daughter has custody of the grandchildren).

As stated in *Freel,* the question is whether the Iowa court has the power to order visitation. *Freel,* 448 N.W.2d at 27. We have no authority, absent a statute, to mandate visitation. *Lihs,* 504 N.W.2d at 892. The reasoning of those cases extends to the present situation where the third party seeking visitation is a stepparent. *Ash,* 507 N.W.2d at 404. In *Bruce v. Sarver,* 522 N.W.2d 67 (Iowa 1994), we discuss the policy reasons which lead us to adhere to our previous line of cases. We will not repeat that discussion here, but rather refer to our decision in *Bruce* for the reasons we continue to hold it beyond the authority of this court to grant visitation to a nonparent over the parent's objection.

### VII. *Waiver.*

On appeal Bob argues that Chris waived her right to challenge the paternity issue. We find this issue was not preserved for appeal. The district court did not address the waiver issue in its decree. To preserve the waiver issue, Bob should have filed a Rule of Civil Procedure 179(b) motion. *In Interest of A.M.H.,* 516 N.W.2d 867, 872 (Iowa 1994).

**AFFIRMED.**