537 N.W.2d 778 (1995)
In re the GUARDIANSHIP OF Heather C. KNELL, A Minor Child.
Russell J. KNELL, Appellant,
v.
Marvin H. SCHRIEVER, Appellee.
No. 94-2002.
Supreme Court of Iowa.
September 20, 1995.
*779 Michael J. McCarthy of McCarthy & Lammers, Davenport, for appellant.
Cynthia Z. Taylor and Patricia Zamora of Dwyer, Wing, Zamora, Taylor & Walters, Davenport, for appellee.
Considered by HARRIS, P.J., and LARSON, SNELL, ANDREASEN, and TERNUS, JJ.
ANDREASEN, Justice.
This case involves a dispute between a father and stepfather over the guardianship and custody of a minor child. After the death of the child's mother, the stepfather petitioned the district court to be appointed as the child's guardian. The father resisted the petition. The court held that under the circumstances, the long-range best interest of the child would be better served if custody remained with the stepfather. The biological father appeals. We affirm.
I. Background.
Theresa and Russell Knell were married in 1988. She was twenty-three and he was twenty-one. Heather was born on November 5, 1988. Theresa had a daughter from a prior relationship (Monica) when she married Russell. The family moved to Arizona two months after Heather's birth. Theresa experienced difficulties during her pregnancy with Heather. She continued to suffer severe problems after Heather's birth, but delayed going to a doctor because the family could not afford it. When she finally sought medical attention, she was diagnosed with advanced stages of Lupus, a terminal illness. She was immediately hospitalized for over two weeks.
Much of the evidence of the parties is conflicting. Russell would have us believe that he was a responsible husband and father while married to Theresa, caring for the children and doing household chores in addition to working full-time during Theresa's illness. He claims that Theresa's behavior changed dramatically as a result of her illness, and she exhibited temper outbursts and a kind of rage. He asserts that Theresa took the children and left him. He also claims that Theresa rebuffed his efforts to maintain contact with Heather, restricting his right to visitation with his daughter and refusing to let him speak to her on the phone. He claims his only contact with Heather for some time has been through regular cards and gifts.
The testimony of Theresa's parents and other evidence received at trial, including a journal Theresa kept while she was married to Russell, does not resemble Russell's story. This evidence suggests the following.
While Theresa was hospitalized, Russell rarely visited her. He refused to pick her up from the hospital when she was released. Instead, Theresa had to wait at the hospital all day for a ride from a friend. Upon her release, she was under medical instructions to rest and to do absolutely no housework or child care. Her doctors arranged for child care to be provided through social services while Russell was at work so she could get the needed rest. Russell refused to help or care for the children while he was at home, insisting that Theresa take care of the children and maintain their home. Because she did not get the necessary rest, she relapsed and was hospitalized again, only a week after she was released.
When Theresa was again released, Russell's behavior did not change. His behavior *780 constituted a serious threat to her health. Her journal is filled with numerous examples of his callous disregard for her and the children's well-being. Instead, he consistently put his own desires ahead of his family's needs. Her journal also indicates his treatment of the children, especially Monica, was less than ideal, perhaps even abusive. One time he left the children unattended while Theresa was sleeping. She woke to find Heather standing in her crib screaming with hunger. Monica was playing outside in the street.
In spite of Theresa's attempts to communicate and work through the family's problems, the marriage deteriorated. Ultimately, Russell changed the locks on the family's apartment and turned off all the utilities. Theresa then turned to her parents for help. Her parents provided air fare for Theresa and the girls to fly to Denver, Colorado to stay with them in September 1989. Heather was ten months old at the time. Theresa and the children lived with her parents for about another year.
In Colorado, Theresa's illness worsened and she was again hospitalized. She underwent an extensive medical regimen, and the disease went into remission. She was discharged from the hospital. During this time Russell dropped Theresa and the children from his medical insurance, in spite of the fact they were still married. She attempted to keep him informed about the children for a while, but he never responded. He did not acknowledge their birthdays or send anything for Christmas. Finally, Russell filed for divorce in Arizona.
The Arizona divorce decree granted Theresa custody of Heather, subject to Russell's visitation rights. The court also ordered Russell to pay $268.45 per month in child support. Russell's child support obligation was satisfied in full through wage assignment.
Theresa met Marvin Schriever in Colorado and they were married on July 21, 1990. They moved from Denver to Iowa in 1992. With Theresa's consent, Marvin adopted Monica.
Theresa died on April 10, 1994 from Lupus. Russell then petitioned for modification of the child custody provisions of the Arizona court decree. Marvin filed a petition for guardianship of Heather on April 13, 1994. He was appointed as Heather's temporary guardian in an ex parte order. Russell resisted Marvin's petition for permanent guardianship of Heather. The Arizona court stayed its proceedings arising from the divorce decree and modification and declined jurisdiction to hear and determine this custody matter, deferring to the home state of the child pursuant to Iowa Code section 598A.3(1)(a), (b), and (c) (1993).
The Iowa district court determined that Russell is a qualified and suitable parent under the statute. However, the court also concluded that "[r]emoval of Heather from her present familial environment would have an exaggerated traumatic effect upon her under these circumstances, not easily if ever capable of being overcome." As a result, the court held that Heather's long-range best interest would be better served if she remained in Marvin's custody. The court also ordered Marvin to engage Heather's psychologist to assist in the reestablishment of the parent-child relationship between Russell and Heather. Russell appeals.
II. Scope of Review.
The parties agree the petition for the appointment of a guardian for Heather, a minor child, is properly tried in equity. Therefore our review is de novo. In re Guardianship of Stewart, 369 N.W.2d 820, 822 (Iowa 1985). We give weight to the findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).
III. Rebuttal of Parental Preference.
Russell argues that because the court found him to be a fit and suitable parent, it had no authority to award guardianship and custody of Heather to Marvin. In resolving a custody dispute, the primary consideration is the best interest of the child. Iowa R.App.P. 14(f)(15); In re Marriage of Halvorsen, 521 N.W.2d 725, 729 (Iowa 1994). *781 There is, however, a presumptive preference for parental custody. Halvorsen, 521 N.W.2d at 729. Iowa Code section 633.559 creates a presumption of parental preference. The statute provides in part: "The parents of a minor, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian." Iowa Code § 633.559.
However, the parental preference is rebuttable. In re Interest of Rohde, 503 N.W.2d 881, 883 (Iowa App.1993); Hulbert v. Hines, 178 N.W.2d 354, 361 (Iowa 1970); see also Carrere v. Prunty, 257 Iowa 525, 531-32, 133 N.W.2d 692, 696 (1965) ("[Statutes] giving preference to parents in custody cases do not provide for an absolute right in the parent but only a presumptive right which must give way where it has been relinquished or where the welfare and best interest of the child call for other custody.") (citation omitted). Despite the recognition of the parental preference, in some cases we have refused to return custody to the natural parent. See, e.g., In re Marriage of Wolf, 509 N.W.2d 736, 737 (Iowa 1993); In re Marriage of Reschly, 334 N.W.2d 720, 723 (Iowa 1983); Patten v. Patrick, 276 N.W.2d 390, 398 (Iowa 1979); Halstead v. Halstead, 259 Iowa 526, 538, 144 N.W.2d 861, 867 (Iowa 1966).
In determining the child's best interest, we must take into account the strong societal interest in preserving the natural parent-child relationship. Zvorak v. Beireis, 519 N.W.2d 87, 89 (Iowa 1994). Also, the court must consider the long-range interest as well as the immediate interest of the child. In re Guardianship of Sams, 256 N.W.2d 570, 573 (Iowa 1977). Marvin bears the burden of proof of rebutting the presumption favoring the natural parent by establishing that Heather's best interest requires that she continue in his care. See Stewart, 369 N.W.2d at 823.
In determining Heather's best interest, the court accepted Marvin and Theresa's version of the disputed facts. "We pay close attention to the credibility findings of the trial court because it had the opportunity to observe and listen to the parties and other witnesses. . . ." Id. at 824. We agree with the findings and conclusions of the district court.
Marvin married Theresa in April 1990, with full knowledge of her illness. He developed a good relationship with the girls and adopted Monica. He attempted to adopt Heather too, but Russell refused his permission. Marvin moved to Iowa in April 1992. Theresa and the girls followed in July that same year. In nurturing their newly formed family, Marvin and Theresa worked hard to help the girls understand and deal with Theresa's illness and ultimate death.
In the meantime, Russell's attempts to visit or have contact with Heather were few and far between. In the six years since the separation, he has seen her only three or four times. The parties dispute whether Russell made any real attempt to maintain contact with Heather. It appears that his calls were infrequent. It also does not appear that he sent regular cards or gifts, as he claims. The only time he requested an extended visitation with her, he proposed to put her on an airplane to Arizona alone. Theresa refused because Heather was only three at the time, which she thought was too young to make the trip by herself.
We do not find Russell's claims that he regularly attempted to maintain contact with Heather to be credible. The district court characterized his actions this way: "[Russell] has not been a part of her life for six years; his interest has at best been passive and at worst, a physical and emotional abandonment." In any event, Russell never sought judicial action to enforce his visitation or parental rights. The result of his inattention is that he is a stranger to Heather. She is now six years old and has had minimal contact with him since she was ten months old. Although she has been told that Russell is her father, she is confused about the idea.
In contrast, Marvin continues to be attentive to both girls' needs. Shortly after the death of their mother, he secured counseling for them with a child psychologist, Charles S. Hayes, Ph.D. The primary purpose of the counseling was to assist the children in coping with the loss of their mother. Dr. Hayes testified he had seen Heather nine times. He diagnosed her with an adjustment disorder *782 as a result of losing her mother. He testified it would be very traumatic to separate Heather from either Monica or Marvin, especially so soon after her mother's death. Such a separation would likely only worsen the present psychological problems she exhibits.
Marvin also provides a good home for the children. The family lives in a double-wide mobile home in Eldridge, Iowa. A neighbor testified the home is a nice, clean home. Testimony indicated that he is a good father and stepfather. The children are well-behaved and act towards Marvin as if he were their father. He disciplines them by withdrawing their privileges rather than using corporal punishment. The children are clean, well-dressed and supervised, and clearly loved by Marvin.
Testimony indicated that Russell also has a good home. He has remarried and has another daughter who was twenty-two months old at the time of the trial. He is steadily employed and has a close family relationship with relatives who live near him. However, he had made no plans and had given no thought to dealing with the psychological adjustment Heather would face if she came to live with him and his family. His lack of planning is significant in light of his testimony that he recognized the change would be hard on everyone, including him. He testified he merely planned to show up with an Arizona court order giving him custody and to take her. Whereas Marvin and Monica make up Heather's support system, Russell has not demonstrated an ability to address her emotional needs. Although he recognized his responsibility to provide financial support, Russell has not demonstrated a knowledge or concern for Heather's nonfinancial needs. See In re Marriage of Hunnell, 398 N.W.2d 877, 880 (Iowa 1987).
We have held that if return of custody to the child's natural parent "is likely to have a seriously disrupting and disturbing effect upon the child's development, this fact must prevail." Painter v. Bannister, 258 Iowa 1390, 1396, 140 N.W.2d 152, 156 (1966) (citation omitted). Additionally, it is appropriate for the court to rely on Dr. Hayes' testimony about the possible psychological effects of separating Heather from the only family she has ever known. See id. at 1397, 140 N.W.2d at 156. Our decision that Heather's custody should not be changed is also supported by the principle that
if a person having lawful care of a child has properly provided for a child's social, moral and educational needs for a substantial period of time and the child has become attached to that environment and those responsible for his [or her] welfare and happiness, a court is not justified in transferring that custody to another except for the most cogent reasons.
Doan Thi Hoang Anh v. Nelson, 245 N.W.2d 511, 517-18 (Iowa 1976) (citations omitted). Our concern that separating Heather from Monica would be emotionally traumatic for her is supported by the principle against separating siblings. See id.; Sams, 256 N.W.2d at 573. Russell argues that Heather also now has a sibling in Arizona. Heather has never met that sister.
We have held that "a parent who has taken `an extended holiday from the responsibilities of parenthood' may not take advantage of the parental preference for custody." Stewart, 369 N.W.2d at 823 (citations omitted). This case is unlike other cases where we have held a parent does not lose the preference by seeking help in caring for the children in a time of need. See, e.g., id.; In re Burney, 259 N.W.2d 322, 324 (Iowa 1977); Sams, 256 N.W.2d at 573. In those cases the parents sought help with their children by temporarily placing them in others' homes, but maintained contact with the children while providing whatever support they could. Here, Russell did not make a serious effort to maintain contact with Heather; and although he satisfied his support obligation through a court-ordered wage assignment, he had the court-ordered obligation terminated almost immediately after learning of Theresa's death.
This case is also different than Halvorsen where we stated: "A court may only grant a nonparent custody of a child over a parent when the nonparent proves that the parent seeking custody is not suitable to have custody." Halvorsen, 521 N.W.2d at 729. In Halvorsen a stepfather was seeking custody of the child in a divorce action against the *783 child's natural mother. The mother was a fit and proper custodian for the child. Also, the child had always lived with the mother, so the mother was not a stranger to the child. As a result, the stepfather did not rebut the parental presumption. Halvorsen did not involve removing a six-year-old child from the only home she had ever known and placing her in the home of a virtual stranger at a time when such an act would be extremely traumatic for her.
The passage of time, under the circumstances of this case, carries considerable weight in our determination. A parent who fails to develop a relationship with his or her child while that child is establishing a family relationship with a stepparent must recognize the child thereby puts down roots that are of critical importance. Courts must carefully deal with those roots in determining the child's best interest. Although Russell has the ability to provide a good home for Heather, we conclude he would not be suitable to have custody of her at this time.
Because we find it is in Heather's best interest to remain in Marvin's custody, we affirm the decision of the district court. We also affirm the court's order providing for the establishment of the parent-child relationship between Russell and Heather and the employment of Dr. Hayes to aid in this plan. We commend the court for its recognition of the need to protect Heather's psychological well-being during this process.
AFFIRMED.