In the Matter of the GUARDIANSHIP OF Courtney Lynn HENSLEY.

Robert REESE and Martha Reese, Appellants,

v.

Michael HINES and Jane Hines, Appellees.

No. 97–1414.

Court of Appeals of Iowa.

May 29, 1998.

**190**

James W. Affeldt and Richard Q. Barrett of Elderkin & Pirnie P.L.C., Cedar Rapids, for appellants.

Richard L. Boresi of King, Smith & Boresi, Cedar Rapids, for appellees.

David G. Thinnes of Thinnes & Liesveld, Cedar Rapids, for minor child.

Considered by CADY, C.J., and VOGEL and MAHAN, JJ.

VOGEL, Judge.

The Reeses appeal the district court's grant of their granddaughter's (Courtney's) guardianship to the Hines. Because we find substantial evidence in the record supports the district court's determination that the Hines should be appointed guardians for Courtney, we affirm.

**Background facts.** Michael Hines and Marty Reese were married in 1963 and had a daughter named Tonni. Michael and Marty divorced after a few years of marriage and Michael is now married to Jane Hines and Marty is married to Robert Reese. The Hines live in Cedar Rapids, Iowa, and the Reeses live in Indiana.

Tonni and Clifford Hensley had a child, Courtney, born August 5, 1989. Due to the couple's drug abuse, they lived a nomadic existence and did not always provide a safe or stable home environment for Courtney. During this period Courtney spent a substantial amount of time in the care of the Reeses.

Clifford and Tonni separated in 1994. Tonni took Courtney to Cedar Rapids and left her in the care of the Hines. CINA proceedings were commenced due to Tonni's inability to care for Courtney. Temporary orders granted the Hines custody of the child and she has lived with them since July 1994.

Tonni died in May 1996. Clifford is incarcerated in Indiana. Both the Hines and the Reeses sought to be appointed guardians for Courtney. Following a trial, the district court appointed the Hines guardians and ordered substantial visitation for the Reeses. The court found both sets of grandparents could provide love and stability. However, the court noted Courtney had lived nearly half of her life with the Hines and it held removing her now would be a disservice to her.

The Reeses appeal.

**Scope of review.** We review actions for the initial appointment of a guardian for a minor generally for errors at law, and not de novo. *In re Guardianship of D.D.H.*, 538 N.W.2d 881, 882–83 (Iowa App.1995). We will support the decision of the trial court if we find the decision is supported by substantial evidence. *Id.*

**Appointment of guardians.** The Reeses contend the trial court should have granted them guardianship status over their granddaughter, Courtney, as they believe they are the more appropriate caregivers.

We agree with the trial court's concession that the Reeses appear to be very capable, loving caretakers of Courtney who would offer her stability. We also agree, however, with the trial court's assessment that the Hines are the appropriate guardians for Courtney.

In deciding between qualified persons to be guardians of a child, we look to the best interest of the child as the principal consideration. *See D.D.H.*, 538 N.W.2d at

883. We determine the best interests of the child by reviewing the evidence and assessing "which party can better provide for the child's emotional, social, moral, material, and educational needs." *Id.* at 883–84.

■ Licensed social worker and registered play therapist, Donna Crookham, has counseled Courtney for just over two years. She testified that Courtney consistently and spontaneously stated her preferences to continue to live with the Hines. Crookham was most impressed at how open the Hines were to encouraging and fostering Courtney's relationship with the Reeses and her other relatives. There was no evidence that the Hines ever spoke negatively about the Reeses to Courtney. Crookham stated she believed the Hines' "intent is for her [Courtney] to be safe and live consistently in one place." Finally, Crookham testified Courtney considered the Hines' home her permanent residence and recommended Courtney remain there as Courtney might otherwise "very likely go into a depression of some kind." She related to the court that Courtney had a strong attachment to the Hines, to the school, to her community, and to her friends.

Additionally, Courtney's pastor, Thomas Phelps, testified to seeing Courtney at church thirty to forty times the year prior to trial and he described her as a "very well-adjusted child." He also noted the Hines' "almost parent-like" very normal and attentive, "strong and affectionate" relationship with Courtney.

Further, Michelle Heusing, a family therapist whose services were contracted through the Department of Human Services (DHS), testified she was involved with Courtney for roughly one year, having seen Courtney roughly fifty times. She also testified Courtney thinks of the Hines' home as her home. Courtney expressed repeatedly to Heusing that she wants to live with the Hines.

Similarly, another non-relative witness, Sterling Kingery (a caseworker with DHS), characterized Courtney's relationship with the Hines as "always positive." He testified the Hines provided adequate care and supervision to Courtney and that their home was a safe environment. Kingery also testified Courtney told him of her desire to remain with the Hines, and he believed it would be in her best interests if she continued to live with them.

Finally, Courtney's second grade teacher, Tonia Louise Hopkins, deemed Courtney to be a contented, happy child who is "very well-adjusted" and "a lot of fun to be around. She's academically solid. She gets along very well with her peers." She testified that she has had many occasions to see the Hines, and spoke with them on the phone "eight or nine" times and described them as "wonderful people and I think that they have Courtney's best interests at heart...." Additionally, Hopkins testified the Hines provided Courtney with "[l]ots of praise and hugs." Hopkins also related to the court that Courtney expressed to Hopkins her preference for remaining with the Hines.

We are mindful that our supreme court has articulated "if a person having lawful care of a child had properly provided for a child's social, moral and educational needs for a substantial period of time and the child has become attached to that environment ... a court is not justified in transferring that custody to another except for the most cogent reasons." *In re Guardianship of Knell,* 537 N.W.2d 778, 782 (Iowa 1995) (quoting *Doan Thi Hoang Anh v. Nelson,* 245 N.W.2d 511, 517–18 (Iowa 1976)). The Reeses' argument that Courtney would be better off in their care for a number of reasons—including the material things they could offer Courtney, superior parenting record and ability, and the time Courtney actually spent in their care—must be balanced against the fact that Courtney has lived with the Hines since July of 1994. Courtney lived with the Reeses for a significant period of time earlier in her life, but more recently has lived exclusively with the Hines. Although the Reeses minimize the importance of Courtney's current living situation, we find it to be a compelling factor as did the district court. We agree with the trial court that removing her from the stable environment—the family, friends, activities, and school—to which she

has grown attached, would be a disservice to Courtney. The Reeses have been afforded substantial visitation with Courtney which protects Courtney's relationship with the Reeses.[1]

Having considered all other arguments before us on appeal, we find there is substantial evidence in the record to support the trial court's determination to appoint the Hines as guardians for Courtney; we accordingly affirm.

**AFFIRMED.**

SACKETT, J., takes no part.

---

1. We observe, however, this would not afford the Reeses notice of any future adoption proceeding under Iowa Code section 600.11. Notice would be required to be given to the Reeses if they had visitation rights under section 598.35, but the Reeses have visitation rights under the guardianship section, 633.556.