In the Matter of the GUARDIANSHIP OF G.G., L.G., M.G. and M.T.G., Proposed Wards,

Mary J. Ernst, Petitioner–Appellant/Cross–Appellee,

v.

Gary S. Grap, Respondent–Appellee/Cross–Appellant.

No. 10–0867.

Court of Appeals of Iowa.

April 27, 2011.

Steven J. Drahozal of Drahozal Law Office, P.C., Dubuque, for appellant.

Stuart G. Hoover of Blair & Fitzsimmons, P.C., Dubuque, for appellee.

Emily E. Reiners of O'Connor & Thomas, P.C., Dubuque, for minor children.

Considered by VOGEL, P.J., and DOYLE and TABOR, JJ.

VOGEL, P.J.

Mary Ernst appeals from the April 2010 order denying her petition for guardianship of her three nieces, M.T.G., born 1991, M.G., born 2001, and L.G., born 2003, and one nephew, G.G. born 1995.[1] Gary Grap, the children's father, cross-appeals seeking trial, as well as appellate attorney fees. Because we find substantial evidence in the record supports the district court's determination that a guardianship for the children is not warranted, we affirm.

Gary and Theresa (Elle) were married in 1990, and five children were born to the couple. A decree of dissolution of marriage was filed in January 2005, granting the parties joint legal custody of the children, with Elle receiving physical care. In February 2007, Gary filed a petition for modification of the dissolution decree, seeking shared physical care of the children and lowering of his child support obligation. Following a November 2007 trial, his petition was denied. In April 2008, Gary again petitioned for modification of the decree, seeking physical care of K.G., born 1993, who had been living with him for several months. In November 2008, during the pendency of the second modification action, Elle suddenly died.

---

1. As the district court correctly found, M.T.G. born in 1991, attained the age of majority during the pendency of this action and the petition for guardianship as alleged is now moot. Iowa Code section 633.552(2)(b) (2009).

Following Elle's death, the children stayed for a few days with Elle's sister, Mary, but then with the exception of M.T.G., who chose to live with Mary, the children moved into Gary's home. Shortly thereafter, Mary filed a petition for involuntary guardianship of M.T.G., M.G., L.G., and G.G.[2] On April 16, 2010, following a trial, the district court denied the petitions for guardianship. Mary appeals.

## I. Standard of Review.

The legislature has specifically provided that actions for the involuntary appointment of guardians shall be triable in probate as law actions. Iowa Code § 633.33 (2009) ("Actions . . . for the involuntary appointment of guardians . . . shall be triable in probate as law actions. . . ."). This language signals that our review of such actions is for errors at law, affirming the district court if the decision is supported by substantial evidence. *See In re Guardianship of M.D.,* 797 N.W.2d 121 (Iowa Ct.App.2011) (following "explicit directive of legislature in section 633.33" to review for correction of legal error); *see also In re Guardianship of Hensley,* 582 N.W.2d 189, 190 (Iowa Ct.App.1998); *In re Guardianship & Conservatorship of D.D.H.,* 538 N.W.2d 881, 882–83 (Iowa Ct. App.1995). However, as the best interests of the children are paramount when considering the guardianship of minors, principles of equity must be applied. *See* Iowa Code § 633.552(4) (stating a petition for appointment of guardian shall state "that the ward's best interests require the appointment of a guardian"); *see In re Guardianship of Reed,* 468 N.W.2d 819, 825 (Iowa 1991) (recognizing that "in this field there is some merging of law and equity distinctions"); *see also In re*

*Guardianship of Knell,* 537 N.W.2d 778, 780 (Iowa 1995) (noting the case was tried in equity and applying a de novo standard of review). Therefore, we will affirm if there is substantial evidence in the record demonstrating that the best interests of the children favors dismissing the petitions for guardianship.

## II. Statutory Order.

### A. The Need for a Guardian and Parental Preference.

On appeal, Mary asserts the district court erred in denying her "petitions for guardianship when the presumption in favor of the biological parent is rebutted." However, before we even reach the issue of whether she rebutted the presumption in favor of Gary being appointed guardian of the children, we review whether Mary proved the allegations for the *need* for a guardian for the children as required under Iowa Code section 633.556. "If the allegations of a petition as to the status of the proposed ward and *the necessity for the appointment of a guardian* are proved by clear and convincing evidence, the court may appoint a guardian." Iowa Code § 633.556(1) (emphasis added). Only after the need for a guardianship is proven does the court then consider who is to be appointed, and gives preference to the natural parent. "[T]he parents of a minor, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian." Iowa Code § 633.559.

Mary reverses this statutory sequence by asserting Gary is both unqualified and unsuitable as a parent, thereby attempting to rebut the preference for a natural parent to serve as a guardian under Iowa

---

**2.** K.G. has resided with Gary since November 2007, and Mary did not seek guardianship of him.

Code section 633.559; she then circles back to her assertion of the need for the appointment of a guardian under Iowa Code section 633.556(1). Understandably, proving the "need" for a guardian becomes somewhat muddled with "rebutting parental preference" when one is asserting the need for a guardian exists because of the assertion of the unsuitability of a parent. *See, e.g., Knell,* 537 N.W.2d at 783 (finding child's best interests were to stay with step-father, after detailing long separation from natural father); *In re Guardianship of Stodden,* 569 N.W.2d 621, 625 (Iowa Ct.App.1997) (finding best interest of the child served by not removing him from step-mother's care, and affirming her guardianship petition); *In re Rohde,* 503 N.W.2d 881, 883 (Iowa Ct.App.1993) (finding proposed guardians had not carried their burden of proof that natural father could not provide for needs of child). Although the district court did discuss "parental preference," it began with the proper threshold analysis and determination that, "G.G., M.G., and L.G., are minors and qualify for guardianship if a need was demonstrated by clear and convincing evidence. Mary has not satisfied this burden."

### B. Evidence Regarding the Need for a Guardian.

■ To support her claim that she should be appointed the children's guardian, Mary introduced Elle's Last Will and Testament into evidence, which nominated Mary as the children's guardian.[3] She claimed Elle feared for the children's safety if left in Gary's care. In December 2003, prior to the parties' dissolution of marriage, M.T.G., G.G. and K.G. were adjudicated children in need of assistance, stemming from Gary's troubling behavior with repercussions reaching to these children. The juvenile court characterized the situation as a "bitter custodial divorce situation and the children in the middle and fearful of father." Concurrent jurisdiction was granted to the district court pursuant to Iowa Code section 232.3 and the juvenile case was dismissed with the filing of the dissolution of marriage decree.

Gary asserts the 2003 adjudication was largely based on Elle's false accusations, and that he is a fit parent who is actively involved in the lives of his children. At the guardianship hearing, three mental health professionals testified on Gary's behalf, all affirming his ability to safely and adequately parent his children. Jerome Beckman, Ph.D., while acknowledging Gary's shortcomings, testified that Gary was an "above average" parent, and he did not have reservations about Gary's ability to parent. Marion Huettner, Ph.D., testified that M.G. and L.G. seemed affectionate towards Gary, and she did not note any concerns in their relationship. She testified that G.G. had some emotional issues after his mother's death, but by the time of the guardianship trial, Dr. Huettner felt G.G. was becoming more stable. Gary was evaluated by Thomas Boxleiter, M.D., who opined through his deposition testimony that he saw in Gary, "no evidence of dangerousness, no psychiatric diagnosis." The guardian ad litem, in a detailed report, concluded Gary had provided a good home for the children, involved them in activities, provided them with counseling and appeared attentive to their needs. Finally, Gary's two adult children from a previous marriage also testified. One described Gary's relationship with the children as "normal" and the other denied ever seeing

---

**3.** Mary acknowledges Iowa Code section 598.41(7) provides in part that when a parent who was awarded physical care dies, "the court shall award legal custody including physical care of the child to the surviving parent unless the court finds that such an award is not in the child's best interests."

any inappropriate behavior between Gary and the children.

In examining the evidence, the court discussed the trauma the family has endured following the death of Elle, the evolving family dynamics, and Gary's positive and negative traits, along with summarizing the testimony of the experts and the recommendation of the guardian ad litem. The court concluded it was

> much more concerned with the events of the past year and whether Gary is a capable father today. The overwhelming evidence suggests that he is. The fact that he is not perfect matters not, for the law fortunately does not demand perfection from a parent. Nor does the fact that Mary loves the children and would do anything for them negate the Court's conclusion that a guardianship is not necessary for any of the children.

We agree with the district court that while Mary raised concerns as to Gary's temperament, and past parenting behaviors, the evidence she offered was not sufficient to demonstrate the need for appointment of a guardian for the minor children. Substantial evidence supports the district court's finding that denying Mary's petitions for involuntary guardianship was in the children's best interests. We therefore affirm. Because we affirm this conclusion of the district court, we need not address whether Mary has rebutted the preference for the natural parent to serve as guardian under Iowa Code section 633.559.

### III. Admission of Deposition.

■ Mary next asserts the court erred in admitting the deposition of Dr. Boxleiter into evidence, as Gary failed to pay for the deposition prior to trial. Gary responds that even if the court erred in admitting the deposition prior to payment, Mary cannot demonstrate that the outcome of the case would have been any different without

use of the deposition. Iowa Rule of Civil Procedure 1.716 provides:

> Costs of taking and proceeding to procure a deposition shall be paid by the party taking it who cannot use it in evidence until such costs are paid. The judgment shall award against the losing party only such portion of these costs as were necessarily incurred for testimony offered and admitted upon the trial.

At the deposition, Gary's attorney stated: "Dr. Boxleiter would be, being called by the Respondent, Gary Grap, in this case. Dr. Boxleiter, being our witness, we will examine him first." However, in her pretrial Motion to Assess Fees, Mary stated that although Dr. Boxleiter was listed as a witness for Gary, she "sought to depose the witness[ ]", yet "[T]he deposition was taken by the father," and she paid $650 to Dr. Boxleiter for his testimony. The district court admitted Dr. Boxleiter's deposition, stating that there was

> a bit of ambiguity because the rule talks about costs being paid. The parties can't really agree on exactly who took the deposition. I know that [Gary's attorney] started with the questioning. However, the deposition was originally arranged and Dr. Boxleiter was paid as a witness by [Mary].

Finding the circumstances to be "unusual," the court admitted the deposition. In its ruling, the court referenced Dr. Boxleiter as one of the experts who found Gary to be a suitable parent. With the district court clearly reviewing how the deposition was taken and later used during the trial, we do not find that the court abused its discretion in admitting the deposition, absent prior payment by Gary.

### IV. Cross–Appeal—Trial Attorney Fees.

■ Gary cross-appeals the district court's denial of his request for trial attorney fees. We review the district court's award of attorney fees for an abuse of

discretion. *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.,* 691 N.W.2d 730, 732 (Iowa 2005). Iowa Code section 633.551(5) provides that when a petition to establish a guardianship is dismissed, attorney fees may be assessed against the petitioner "for good cause shown." Gary asserts that Mary filed the petitions for guardianship, "under the false belief that she would be the better caretaker of the minor children." The district court ultimately found "this is a tragic case in many respects" and the children "are left with two adults who love them, but those adults cannot seem to coexist in the children's lives." We do not find Gary demonstrated "good cause" for trial attorney fees and hence find no abuse of the trial court's discretion in denying Gary's request for attorney fees.

### V. Appellate Attorney Fees.

Gary next requests appellate attorney fees. We consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Maher,* 596 N.W.2d 561, 568 (Iowa 1999). After considering the appropriate factors, including the district court's finding of "overwhelming evidence" that Gary is a capable father, and reviewing his attorney's statement of legal services, we award Gary $1900 in appellate attorney fees. Costs on appeal assessed to Mary.

**AFFIRMED.**