# IN THE COURT OF APPEALS OF IOWA

No. 17-1559
Filed September 12, 2018

IN THE MATTER OF THE GUARDIANSHIP OF D.B., L.B., and A.B.,

JAMES A. KERNES and CHERYL ANN KIRK,
    Petitioners-Appellees,

vs.

EDWARD PAUL BUNCH, JR.,
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Hamilton County, Timothy J. Finn, Judge.

A father appeals the establishment of a guardianship for three of his children. **AFFIRMED.**

Karen A. Taylor of Taylor Law Offices, PC, Des Moines, for appellant.

Robyn C. Huss of Huss Law Office, PLC, Ames, for appellees.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

A father, Edward Bunch, appeals the district court's appointment of guardians for three of his children following the death of the custodial mother. Because we find substantial evidence in the record supports the district court's determination that a guardianship is warranted and the appointment of guardians, we affirm.

## I.     BACKGROUND FACTS AND PROCEEDINGS

Edward and Kimberly Bunch[1] were married from 2003 to 2012. Edward and Kimberly had four children together, born between 2001 and 2010—B.B., D.B., L.B., and A.B.[2] In 2004, Edward pled guilty to a domestic abuse assault against Kimberly. In 2012, Edward and Kimberly divorced, with the court granting Kimberly sole custody of the children. The court issued a temporary protective order for Kimberly against Edward in 2011, which became permanent once the divorce was finalized.

In 2013, Kimberly and the children began living with James Kernes (Kernes), whom Kimberly later married. Kimberly, Kernes, and the children soon moved to Jewell, where her parents lived. In 2014, Kimberly and Kernes had a child. The children have attended schools in Jewell for a number of years. B.B., Kimberly and Edward's oldest child, currently lives with Kimberly's mother, Cheryl

---

[1]   Kimberly used the last name Bunch during her marriage to Edward. Following the dissolution of their marriage, she was Kimberly Edwards until her marriage to James Kernes, when she became Kimberly Kernes.

[2]   Edward has nine other children. Five are adults, three are minor children (whose ages fall between B.B. and D.B.) who live in another state, and the youngest, born in 2015, lives with Edward and his fiancé. Kimberly has one other child born in 2014.

Kirk (Kirk). B.B.'s guardianship and custody is not at issue here. Kimberly was a stay-at-home mother. Kernes works full time in Des Moines.

In 2013, Edward was convicted and imprisoned for a felony drug offense.[3] In 2014, shortly after he began work release, he began dating Melissa. Edward works full time in Garner. Edward and Melissa are engaged and live with Melissa's son and their daughter in Forest City. Edward has progressed from supervised visitations after the divorce to unsupervised overnight visitation with the children.

In 2016, the Iowa Department of Human Services (DHS) monitored the Kernes family due to unconfirmed allegations of Kimberly and Kernes using controlled substances while caring for the children. DHS investigated, including talking with all four children, and found no evidence to support the allegations,. DHS suspected the complaint was custody based. During the investigation, a child told the DHS worker that Edward used controlled substances and abused the children. The children all stated they felt safe in the Kernes home.[4] After the investigation concluded, Kimberly continued working with Child Protective Services and Family Safety, Risk, and Permanency Services for assistance with behavioral and mental health issues of one child, who is receiving intensive treatment. One of the other children also requires special attention due to autism.

On March 24, 2017, Kimberly died. Edward attempted to assume custody of the three children living with Kernes (D.B., L.B., and A.B), including filing a petition to modify custody. On April 6, Kirk and Kernes—Kimberly's mother and

---

[3] Edward was still on parole for this offense at the time of trial.
[4] One child made allegations of abuse against both Edward and Kernes in the past. Upon investigation, the child told DHS the allegations against Kernes were a lie. DHS issued a notice of founded child abuse report relating to the incident with Edward.

husband—filed applications for emergency appointment of temporary guardianship and custody of the four children, as well as petitions for permanent appointment as guardians. Edward contested the appointments as to the three younger children. On April 7, the court appointed Kernes temporary guardian of D.B., L.B., and A.B. Kirk became a stay-at-home caretaker.

At trial to establish the guardianship on June 27, the court heard testimony from one of the children, Kirk, Kernes, one of Edward's adult children, Edward's neighbors, Melissa, and Edward. In its ruling on July 17, the court granted guardianship and custody of the three children to Kirk and Kernes. Following a motion by Edward, the court enlarged and amended the ruling without altering the guardianship. Edward appeals.

## II.    STANDARD OF REVIEW

The parties state this case was tried in equity by the district court, and both parties propose de novo review for the court to consider the best interests of the children. *See* Iowa R. App. P. 6.907. However, it is the termination of a guardianship, not the opening of one, which is reviewed de novo. *See In re Guardianship of M.D.*, 797 N.W.2d 121, 126–27 (Iowa Ct. App. 2011).

The appropriate standard of review for cases involving the *establishment* of a guardianship is for errors at law. Iowa Code §§ 633.33, .555 (2017); *M.D.*, 797 N.W.2d at 126. In a review for correction of errors at law, we do not reweigh the evidence or the credibility of the witnesses. *EnviroGas, LP v. Cedar Rapids/Linn Cty. Solid Waste Agency*, 641 N.W.2d 776, 785–86 (Iowa 2002). The court's factual findings are binding on appeal if supported by substantial evidence. Iowa

R. App. P. 6.904(3)(a); *In re Guardianship of Murphy*, 397 N.W.2d 686, 688 (Iowa 1986).

**III.     MERITS**

The court determined the children were in need of a guardianship pursuant to Iowa Code section 633.551 because their mother, who had sole legal custody and physical care, had died and their biological father was not suitable to have the children in his physical care. *See In re Guardianship of G.G.*, 799 N.W.2d 549, 550 (Iowa Ct. App. 2011) (requiring proof of the need for a guardian before considering who to appoint). The court analyzed the father's unsuitability as part of its analysis to determine the appropriate guardians for the children.

In considering guardianship and custody questions, our primary concern is the best interests of the children. *In re Guardianship of Knell*, 537 N.W.2d 778, 780–81 (Iowa 1995). We consider both the children's immediate and long-term interests. *In re Guardianship of Roach*, 778 N.W.2d 212, 214 (Iowa Ct. App. 2009).

The legislature has established an order of preference for potential guardians, with natural parents, "if qualified and suitable," as the preferred guardian. Iowa Code § 633.559. That preference is rebuttable, with the other potential guardian bearing the burden of proving by clear and convincing evidence the natural parent unsuitable or unqualified. *M.D.*, 797 N.W.2d at 127. Therefore, our determination of the children's best interest "must take into account the strong societal interest in preserving the natural parent–child relationship." *Northland v. Starr*, 581 N.W.2d 210, 212 (Iowa Ct. App. 1998). We may look at a parent's past performance as indicative of future care the parent may provide. *Id.* If return of

custody to the natural parent would seriously disrupt and disturb the child's development, that fact prevails. *Knell*, 537 N.W.2d at 782.

Siblings should be kept together wherever possible. *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994). The children have younger half-siblings living in both Edward's and Kernes's households. B.B, the oldest of the four children, lives with Kirk near Kernes and is able to interact with the three younger children daily when they reside with Kernes and Kirk. B.B. does not have a positive relationship with Edward.

The district court started its analysis with the dissolution decree granting sole legal custody to Kimberly, with only supervised visitation for Edward. We note the visitation has slowly transitioned to unsupervised overnights, but Kimberly was still the sole legal custodian of B.B., D.B., L.B., and A.B. Evidence before the court included Edward's recent criminal history and allegations of abuse, including a founded (though not confirmed) child abuse report relating to one of the children, hostile text messages, and testimony of abusive behavior toward the children. The court noted Edward's prior lack of care for the majority of his thirteen children, inability or failure to pay child support, and failure to complete court-required custody programming. Ultimately, the court weighed the best interests of the children and found Edward "is not a suitable person to have the children in his physical care."

Past behaviors do not overcome the presumption in favor of a parent if they do not pose present risks. *See, e.g.*, *M.D.*, 797 N.W.2d at 128 (considering substance abuse, mental health, and instability); *Northland*, 581 N.W.2d at 213 (considering immaturity and lack of financial responsibility). However, the

evidence tends to show Edward's problem behaviors pose present risks. In particular, recurring criminal behavior, allegations of abuse, failure to take responsibility for his actions, and an inability or unwillingness to recognize the children's special needs and the appropriate care for the children's mental and emotional development and health, all of which were evidenced in the record, support the district court's determination that Edward is not currently a suitable guardian. We find substantial evidence in the record supports the district court's finding Kirk and Kernes should be named guardians at this time.

As the district court noted, this is not a termination proceeding. While Edward cannot change his past, he can take steps to show his past behaviors no longer pose risks to the children.[5] He can work with DHS, Kirk, Kernes, and the children's schools to understand and implement the care and supervision the children need. When he is more qualified to meet the continuing needs of the children, he may petition for custody and to terminate the guardianship. *See In re Guardianship of Stewart*, 369 N.W.2d 820, 822 (Iowa 1985) (considering father's application to terminate guardianship); *Maruna v. Harper*, No. 15-1899, 2016 WL 5930881, at *2–3 (Iowa Ct. App. Oct. 12, 2016) ("The preference [for qualified and suitable parents] would be meaningless if it did not come with the ability to seek termination of an existing guardianship."). We affirm the district court.

**AFFIRMED.**

Potterfield, P.J., concurs; McDonald, J., dissents.

---

[5]   Evidence was presented showing Edward has sent hostile text messages to the children. He has injured at least one child from what was described as "rough housing." Edward has failed to provide support for the children and failed to acknowledge that one of the children is autistic.

**McDONALD, Judge** (dissenting).

"Guardianship proceedings concerning conflicting custodial claims of parents and nonparents implicate a parent's fundamental liberty interest in parental autonomy." *In re Guardianship of Blair*, No. 01-1565, 2003 WL 182981, at *3 (Iowa Ct. App. Jan. 29, 2003) (citing *Reno v. Flores*, 507 U.S. 292, 301–02 (1993)). Iowa's guardianship statute and caselaw recognize and protect a parent's fundamental interest in the care and custody of his children. Iowa Code section 633.559 provides that a natural parent, "if qualified and suitable, shall be preferred over all others for appointment as guardian." Use of the term "shall" creates a mandatory duty. *See State v. Klawonn*, 609 N.W.2d 515, 522 (Iowa 2000). The district court thus does not have the statutory authority to appoint nonparents as guardians of children over a parent's objection without evidence the parent is not "qualified and suitable" to serve as guardian.

To prove a parent is not qualified and suitable, the nonparents must prove the parent is "unfit." *In re Guardianship of S.K.M.*, No. 16-1537, 2017 WL 5185427, at *6 (Iowa Ct. App. Nov. 8, 2017); *see In re Guardianship of C.R.,* No. 14-1039, 2015 WL 576385, at *5 (Iowa Ct. App. Feb. 11, 2015) (McDonald, J., concurring in part and dissenting in part) (concluding the nonparents must prove the parent is unfit). "[T]his requires evidence the parent cannot provide the child with reasonable parental care, meaning nurturing and protection adequate to meet the child's physical, emotional, and mental health needs and that the parent's inability to provide reasonable parental care poses a substantial and material risk of harm to the child." *S.K.M.*, 2017 WL 5185427, at *6.

Because of the fundamental rights implicated in a guardianship proceeding, "nonparent[s] bear[ ] the burden of persuasion throughout guardianship proceedings, including initial appointment, modification, or termination to rebut the presumption favoring parental custody by providing clear and convincing evidence of parental unsuitability." *Id.* at *5 (quoting *Blair*, 2003 WL 182981, at *5). "Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016) (en banc). "It is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* We impose this significant burden on the nonparent guardians to minimize the risk of erroneous interference in the parent-children relationship. *See id.*

The district court committed legal error in granting Kernes and Kirk's petition to establish a guardianship over Edward's objection. First, the district court treated this case as if it were an initial custody determination between parents with equal rights to the children. The district court granted the petition because:

> He [Kernes] has demonstrated a love and commitment to the welfare of all the children. The children all love him and their grandmother. . . . James A. Kernes has demonstrated a commitment to the law and is doing a good job of raising the children in a stable and loving environment. Likewise, the maternal grandmother Cheryl Ann Kirk has demonstrated a loving commitment to the grandchildren of her deceased daughter.

While these findings may be correct, they are also immaterial. The initial question presented is not whether the petitioners have provided loving care for the children. *See Northland v. Starr*, 581 N.W.2d 210, 212 (Iowa Ct. App. 1998) ("Recognition that the non-parental party is an excellent parent to the child will rarely be strong

enough to interfere with the natural rights of the parent."); *id.* at 213 ("[W]e have acted in some cases to remove children from conscientious, well-intentioned custodians with a history of providing good care to the children and placed them with a natural parent."). The initial question presented is whether the petitioners proved by clear and convincing evidence Edward is unfit. The district court erred in granting the guardianship over Edward's objection merely because the petitioners have provided care for the children in the past.

Second, the petitioners did not meet their burden of coming forth with evidence, let alone clear and convincing evidence, demonstrating Edward's care of the children poses a substantial and material risk of harm to the children. *See S.K.M.*, 2017 WL 5185427, at *5–6 (setting forth relevant standard). To the contrary, the evidence shows Edward is qualified and suitable to serve as his children's guardian. For the last several years, Edward has resided with his fiancée, her seven-year-old child from a prior relationship, and their two-year-old child. Prior to Kimberly's death, Edward exercised unsupervised visitation with D.B., L.B., and A.B. every other weekend and extended visitation in the summer. He continued to exercise the same visitation schedule following Kimberly's death. Edward's neighbor testified at trial. She testified she sees Edward with the children on the weekends. She testified he interacts well with them and sees them doing activities. She testified the children are happy. Edward's future mother-in-law testified at trial. She testified Edward loves the children and treats them appropriately and with respect. Edward's fiancée, Melissa, also testified at trial. She testified Edward is great with the children. She testified they do numerous

activities together. Her testimony was corroborated by numerous family pictures. She concluded:

> Q. Do you believe that Ed is a suitable parent for your children? A. Yes, I do. If I didn't, he wouldn't be around my children. I'm very protective but he's given me no reason to think that he would ever harm my kids or any kids. I mean, he's great with kids, the neighbor kids down the street. I mean, he's a good man. He's a good man. He's done a lot to change himself and that deserves recognition because he's tried hard and he's done it.

Edward's pastor noted Edward has been a positive influence on his children, stating "Ed shows love and support for his children and family and finds it important that they attend church together as a family."

The district court relied on Edward's criminal history in support of the conclusion Edward should not serve as the guardian for the children. Edward's status as a prior offender is merely a classification of limited relevance here. *See In re J.S.*, No. 13-1606, 2013 WL 6700304, at *3 (Iowa Ct. App. Dec. 18, 2013) ("The argument erroneously focuses solely on the classification of the parent(s) and not at all on the specific facts related to the mother and children in this case. Such a classification argument is better left to legislative action. The court's role is to decide based on the evidence presented in this case, not on the basis of classification."). The classification has limited relevance because there is no evidence Edward's past criminal conduct poses a current, substantial, and material risk of harm to the children. *See In re Guardianship of M.D.*, 797 N.W.2d 121, 128 (Iowa Ct. App. 2011) (explaining the evidence must show "clear examples" of how the parent's history "is currently manifesting itself as a danger" to the children). Instead, the evidence shows Edward has taken responsibility for his criminal conduct and has worked to make positive changes in his life:

Q. And what did you learn while you were in prison? A. Well, I found God. I found my faith, you know. I'm a strong believer in God. I try to get my children to church on Sunday when possible, you know. I did my treatment and I got my high school GED when I was in prison because I didn't have it because I was kind of messed up on drugs for at least six years before that, you know. I have been clean for about six years but six years before that I wasn't a very good person and I admit that.

Q. And you take responsibility for it? A. I take responsibility for it.

Q. Do you currently use any drugs? A. No.

Q. Do you currently drink any alcohol? A. No.

Q. Is that a commitment you made to better your life? A. Yes, for me and my kids.

Edward's parole officer confirmed Edward complied with parole, regularly tested negative for controlled substances, maintained regular employment, and kept a stable residence. Edward testified he had successfully discharged his parole by the time of the guardianship hearing. It is more appropriate to commend Edward for making long-lasting and positive changes in his life following rehabilitation in prison rather than continue to condemn him for his past mistakes. *See id.* at 130 ("Robert's proof of Melissa's past indiscretions and bouts with substance abuse, anxiety, and depression did not overcome the strong presumption for parental custody. In trying to establish himself as M.D.'s guardian, Robert did not offer clear and convincing evidence that Melissa's continued parenting was likely to have a seriously disrupting and disturbing effect upon M.D.'s development.").

The district court also noted Edward has not provided financial support for his children. The record does not support the factual finding. The children resided with Edward and Kimberly prior to the dissolution of their marriage in 2012, and Edward provided financial support for the family during the marriage. Edward testified he purchased items for the children and provided other financial support

for the children after the divorce. Edward testified he was paying back child support prior to the time of Kimberly's death. The evidence shows Edward built an addition to his home to make sure he had enough space for the children at issue. The district court treated this case as if Edward long ago abandoned the children and was not involved in their lives when the record is actually to the contrary. More important, these facts are immaterial. The record is not disputed that Edward has maintained regular employment since his release from prison. His fiancée has regular employment. They have appropriate and suitable housing. There is no evidence they would not be able to meet the financial needs of the children. In short, there is no evidence Edward's financial situation creates a present risk of substantial and material harm to the children at issue. *See Northland*, 581 N.W.2d at 213 ("The presumption favoring parental custody is not overcome by evidence of a parent's past immaturity and lack of financial responsibility when these indiscretions are not present risks."); *In re Mann*, 293 N.W.2d 185, 189–90 (Iowa 1980). As this court explained in a similar case:

> Sherry further argues Randy failed to provide financial support for Jessica while she was in her care. While Sherry is correct, we do not find this argument dispositive. The presumption favoring parental custody is not overcome by evidence of a parent's past immaturity and lack of financial responsibility when these indiscretions are not present risks. Randy has been employed as a mechanic for the past five years earning sixteen dollars an hour. He lives in a two bedroom modular home and has demonstrated he can provide Jessica with a stable life.

*In re Guardianship of Brown*, No. 01-2072, 2002 WL 31017807, at *2 (Iowa Ct. App. Sept. 11, 2002). The same reasoning applies in this case.

The lack of any risk of harm to the children was confirmed by one of the children. The oldest child at issue, D.B. testified at trial. He testified Edward has

exercised consistent visitation with the children every other weekend for the last several years. He testified he likes visiting with his father. He testified his siblings are close and bonded with their father. He testified he would like to live with Edward. He had no safety concerns about living with his father.

When reviewing guardianships imposed over a parent's objection, to avoid potential constitutional infirmities, we must critically review the evidence to ensure the statutory grounds authorizing a guardianship have been proved. *See Blair*, 2003 WL 182981, at *3. While I believe the district court committed legal error in granting the petition on the evidence presented, nothing in this dissenting opinion should be read to impugn the motives of Kernes or Kirk in seeking to become the guardians of the children or their ability to provide care for the children. I am sure that they are motivated to do what they believe is best for the children and am sure they could provide good care of the children. However, good intentions and ability are not enough to wrest guardianship from a parent over the parent's objections.

I respectfully dissent.